1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                     SOUTHERN DISTRICT OF CALIFORNIA

10

11   MUSTAFA WRIGHT,                    )   Civil No. 09cv2566-JLS (BLM)
                                        )
12                       Plaintiff,     )   **REPORT AND RECOMMENDATION**
                                        )   **FOR ORDER GRANTING IN PART**
13   vs.                                )   **AND DENYING IN PART**
                                        )   **DEFENDANTS E.A. CONTRERAS, E.**
14   N. GRANNIS, SILVA H GARCIA, E. A.  )   **MARRERO, P.A. CORTEZ, ABAD AND**
     CONTRERAS, OFFICE OF WATCH         )   **D. SMITH'S MOTION TO DISMISS**
15   COMMANDER, E. MARRERO, CHIEF       )   **AND GRANTING PLAINTIFF'S**
     MEDICAL OFFICER, OFFICE OF         )   **MOTION TO AMEND**
16   REGISTERED NURSES, P. A. CORTEZ,   )
     ABAD AND D. SMITH,                 )   **[ECF Nos. 24 & 32]**
17                                      )
                         Defendants.    )
18                                      )
                                        )
19   _____)

20          This Report and Recommendation is submitted to United States District Judge Janis

21   L. Sammartino pursuant to 28 U.S.C. § 636(b) and Local Civil Rules 72.1(c) and 72.3(f) of

22   the United States District Court for the Southern District of California.

23          On November 4, 2009, Plaintiff Mustafa Wright, a state prisoner proceeding *pro*

24   *se* and *in forma pauperis*, filed this civil rights suit against Correctional Officer D. Smith,

25   Correctional Counselors Abad and P.A. Cortez, Office of Registered Nurses, Chief Medical

26   Officer, Correctional Captain E. Marrero, Office of Watch Commander, Silvia H. Garcia, and

27   E. A. Contreras under 42 U.S.C. § 1983.   ECF No. 1.   Plaintiff filed a First Amended

28   Complaint ("FAC") on January 23, 2010.   ECF No. 8.   Defendants E. A. Contreras, E.

Marrero, P. A. Cortez, Abad, and D. Smith ("Defendants")[1] filed a motion to dismiss the Complaint on April 1, 2010 for "failure to state a claim upon which relief can be granted." ECF No. 24.  Plaintiff opposed the motion on April 20, 2010 [ECF No. 29] and Defendants filed a reply on May 5, 2010 [ECF No. 30].  Plaintiff replied to Defendants' reply on May 13, 2010 [ECF No. 34] and also filed a Motion to Amend the First Amended Complaint on April 15, 2010 [ECF No. 32].

This Court finds the issue appropriate for decision on the papers and without oral argument pursuant to Local Civil Rule 7.1.(d)(1).  See ECF No. 25.  The Court has considered the FAC, Defendants' Motion to Dismiss, Plaintiff's Opposition, Defendants' Reply and all supporting documents submitted by the parties.  For the reasons set forth below, this Court **RECOMMENDS** that Defendants' Motion to Dismiss ("MTD") be **GRANTED IN PART AND DENIED IN PART** and Plaintiff's Motion to Amend be **GRANTED.**

## BACKGROUND

Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the FAC, and must construe the FAC and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff.  See Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).  According to the FAC, on June 5, 2008, Defendant Smith escorted an inmate by the name of Hopkins into Plaintiff's cell.  ECF No. 8 at 11.  Plaintiff immediately expressed to Defendant Smith that he was reluctant to be housed with Hopkins because he "did not appear to be mentally sound."  Id.  Smith responded "Oh he's just a little crazy, but we got to house him."  Id.  When Plaintiff continued to insist that he did not want to be in a cell with Hopkins, Smith told Plaintiff "you can handle yourself" and left.  Id.  Plaintiff claims that the next day he learned that Hopkins had been moved from his previous cell because another inmate refused to be housed with him due to Hopkins's "crazy" behavior, habit of mumbling profanities to himself, and lack

---

[1]Defendants Chief Medical Officer, Office of Registered Nurses, Silvia Garcia and Office of Watch Commander have not been served in this matter.  See ECF. Nos. 9-12 (Form US-28 5 Process Receipt and Return, unexecuted as to Defendants Chief Medical Officer, Office of Registered Nurses, Silvia Garcia and Office of Watch Commander).  As such, the instant motion is only brought on behalf of the served Defendants.

of bowel control.  Id.  Plaintiff states that he informed Defendant Smith that Hopkins made threatening comments towards him, including stating, "I'm gonna get you," and that he did not want to be in the same cell as Hopkins.  Id. at 12.  After being ignored by Defendant Smith, Plaintiff presented his concerns to Defendant Abad on June 7, 2008.  Id.

Plaintiff claims that he "vehemently complained" about Hopkins to Defendant Abad and told Defendant Abad that he "did not feel safe with Hopkins in the cell."  Id.  Defendant Abad discounted Plaintiff's concerns and told Plaintiff that he "could go to the hole."  Id.  When Plaintiff responded that he should not be punished due to the correctional staff's decision to house him with a mentally unstable person, Defendant Abad ordered Plaintiff to leave his office.  Id.  The next day Plaintiff returned to Defendant Abad's office and again asked to have Hopkins removed from his cell due to his "strange behavior."  Id.  Plaintiff alleges that Defendant Abad then called Defendant Cortez, informed him of the situation, and told him that Hopkins had been "previously ordered single celled."  Id.  Plaintiff was then asked to step out of the office.  When he was summoned back into the office, Defendant Abad told Plaintiff that Hopkins had not been classified yet and that he would take Hopkins to committee to see what they could do, but that in the mean time, Plaintiff "was stuck with him."  Id. at 13.  Plaintiff then pointed out that he should not be housed with Hopkins if he was not classified, but Defendant Abad told him that he had to "just wait it out."  Id.

Throughout the day on June 10, 2008, Plaintiff experienced pain around his rectum but was unsure of the cause.  Id. at 14.  Plaintiff explained that he woke up later than usual, but still felt tired and in need of a nap later in the day.  Id.  As Plaintiff was preparing to take his nap, he saw Hopkins "attempting to pour some of his medication into my coffee mug."  Id.  Plaintiff alleges that he then recalled the events that had taken place the night before specifically, that he was drugged and raped by Hopkins[2].  Plaintiff confronted Hopkins who just smiled.  Plaintiff then went to the nurses' station and reported that he had been

---

[2]In his complaint, Plaintiff states that he "was unsure it wasn't a vivid nightmare."  ECF. No. 8 at 14. However, Plaintiff later clearly alleges that the he was raped.  Id.

drugged and raped[3].  Id.

Plaintiff claims that various members of the R.J. Donovan correctional staff, including Defendants Cortez and Contreras, knew that Hopkins had a history of raping his cellmates and was supposed to be housed in a single cell.  Id.  Plaintiff alleges that Defendants Garcia, Marrero, and Office of Watch Commander had a policy whereby they ignored the single cell status of prisoners in order to fill empty beds and ease the burdens of overcrowding.  Id.  It was this policy and practice that Plaintiff believes led to his alleged drugging and rape.  Id.  In addition, according to Plaintiff, between June 6th and June 10th 2008, Defendant Office of Registered Nurses permitted Hopkins to leave the medical area of the prison without swallowing the powerful medication he was being given, which enabled Hopkins to save enough medication to later drug and rape Plaintiff.  Id. at 15.

Plaintiff alleges that Defendants' conduct violated his constitutional rights of freedom from cruel and unusual punishment and procedural due process as guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution.  Id. at 12. Plaintiff seeks monetary damages and injunctive relief.

### DISCUSSION

Defendants argue that Plaintiff's claims should be dismissed for the following reasons: (1) Plaintiff fails to state a cognizable claim of deliberate indifference under the Eighth Amendment; (2) there is no viable constitutional claim based upon *respondeat superior* or vicarious liability against Defendants Contreras and Marrero; (3) Plaintiff's claim that his Fourteenth Amendment rights were violated is redundant and duplicative of his claim arising under the Eighth Amendment; (4) Defendants are entitled to qualified immunity for their actions; and (5) Plaintiff has failed to demonstrate that he is entitled to injunctive relief.  ECF No. 24 at 2.  Plaintiff disputes Defendants' arguments.

**A.**     **Legal Standard**

Defendants move to dismiss the FAC under Federal Rule 12(b)(6) for failure to

---

[3]Exhibit A, attached to Plaintiff's complaint, contains CDC Form 128-G, a classification chrono.  ECF. No. 8-1 at 15.  The form contains a single cell review and annual review of Plaintiff and discusses the alleged rape, noting that the San Diego Sheriff's Department investigated the allegations and did not uncover any evidence of a rape.

state a claim upon which relief can be granted.  ECF No. 24 at 6.  Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief ..."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims.  See Fed. R. Civ. P. 12(b)(6).  The issue is not whether the plaintiff ultimately will prevail, but whether he has properly stated a claim upon which relief could be granted.  Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003).  In order to survive a motion to dismiss, a Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  If the facts alleged in the complaint are "merely consistent with" the defendant's liability, the plaintiff has not satisfied the plausibility standard.  Id. (quoting Twombly, 550 U.S. at 557).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Twombly, 550 U.S. at 556).

When a plaintiff appears pro se, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Thompson, 295 F.3d at 895.  This rule of liberal construction is "particularly important" in civil rights cases.  Hendon v. Ramsey, 528 F.Supp.2d 1058, 1063 (S.D. Cal. Dec. 28, 2007) (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992)); see also Hebbe v. Pliler, 611 F. 3d 1202, 1205 (9th Cir. 2010) (stating that "because Iqbal incorporated the Twombly pleading standard and Twombly did not alter the Court's treatment of pro se filings, we continue to construe pro se filings liberally."  This is particularly important where the Petitioner is a pro se prisoner litigant in a civil rights matter).  When giving liberal construction to a pro se civil rights complaint, however, the

court is not permitted to "supply essential elements of the claim that were not initially pled." Easter v. CDC, 694 F.Supp.2d 1177, 1183 (S.D. Cal. March 9, 2010) (quoting Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982)). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id. (quoting Ivey, 673 F.2d at 268).

The court should allow a *pro se* plaintiff leave to amend his or her complaint "unless the pleading could not possibly be cured by the allegation of other facts." Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (internal citations omitted). Moreover, "before dismissing a *pro se* complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." Wayne v. Leal, 2009 WL 2406299, *3 (S.D. Cal. Aug. 4, 2009) (quoting Ferdik, 963 F.2d at 1261).

**B.     Eighth Amendment - Deliberate Indifference**

Plaintiff alleges that Defendants were aware of and deliberately indifferent to the fact that his cellmate posed a real and serious threat to him.   ECF No. 8 at 11-15. Defendants argue that this claim should be dismissed because Plaintiff's factual allegations do not establish the subjective element of an Eighth Amendment claim for deliberate indifference.   ECF No. 24-1 at 10.   Specifically, Defendants argue that there is no evidence that they knew that Plaintiff's cellmate posed a real threat to Plaintiff.   Id. at 7-8. Additionally, Defendants note that it is unclear whether Plaintiff was actually assaulted by his cellmate due to his description of the assault as a "nightmare" and the results of an investigation done by the San Diego Sheriff's Department that found "no evidence of rape." Id. at 9.

A prisoner may state a section 1983 claim under the Eighth Amendment against prison officials where the officials acted with "deliberate indifference" to the threat of serious harm or injury by another prisoner. Leach v. Drew, 2010 WL 2640335, *1 (9th Cir. June 28, 2010) (citing Berg v. Kincheloe, 794 F. 2d 457, 459 (1986)); see also Robins v. Prunty, 249 F.3d 862, 866 (9th Cir. 2001).   To assert an Eighth Amendment claim based on failure to

prevent harm, a prisoner must satisfy two requirements: one objective and one subjective. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Under the objective requirement, the inmate must show that he was incarcerated under conditions posing a substantial risk of serious harm. Id. Under the subjective requirement, the prisoner must allege facts which demonstrate that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. To prove knowledge of the risk, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Id. at 842.

### 1.    Objective Requirement

Plaintiff has pled facts that satisfy the objective prong of an Eighth Amendment claim. In his complaint, Plaintiff alleges that he was drugged and raped in his cell by his cellmate, who should have been single celled. ECF No. 8 at 14. These facts sufficiently allege that Plaintiff was incarcerated under conditions posing a substantial risk of serious harm. See Farmer, 511 U.S. at 834; see also Becker v. Cowan, 2008 WL 802933, *11 (S.D. Cal. 2008) (finding that "a substantial risk of being physically attacked, beaten, or raped is sufficiently serious to satisfy the objective element of an Eighth Amendment claim") (citing Farmer, 511 U.S. at 832).

### 2.    Subjective Requirement

Defendants argue that Plaintiff has not alleged facts demonstrating that each Defendant was put on "notice that plaintiff suffered a serious risk of harm due to his cell assignment." ECF No. 24-1 at 8; ECF No. 30 at 4. Rather, Defendants argue that, at most, Plaintiff's alleged facts merely establish a "generalized or theoretical risk of harm from his cell mate" and a theoretical risk is insufficient to state a claim. Id.

#### a.    *Defendant Smith*

Plaintiff alleges that Defendant Smith knew that Hopkins posed a serious threat to his safety because: (1) Hopkins recently was moved out of another cell in housing unit 13 "on Defendant Smith's watch" because Hopkins was "acting crazy," mumbling profanities

1   to himself, and did not have control of his bowels; and (2) Plaintiff told Smith that Hopkins

2   had made threatening statements to Plaintiff.  ECF No. 8 at 11.

3         While the Court must interpret Plaintiff's alleged facts, and circumstantial evidence,

4   liberally and in the light most favorable to Plaintiff, the FAC fails to allege that Defendant

5   Smith was aware of, and indifferent to, the risk of harm facing Plaintiff.  Plaintiff's initial

6   allegations are too conclusory to establish the requisite knowledge.  See Iqbal, 129 S.Ct. at

7   1949 ("more than an unadorned, the-defendant-unlawfully-harmed-me accusation is

8   required to state a claim for a constitutional violation").  Plaintiff alleges that Hopkins was

9   moved out of another cell during Smith's watch.  ECF No. 8 at 11.  From this allegation, the

10   Court can infer that Smith knew that Hopkins had been moved out of a prior cell.  Wallis v.

11   Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995) (circumstantial evidence is permissible).

12   However, the complaint does not contain any allegations that Hopkins was moved because

13   he was a danger to his cellmate or that Smith knew about such facts.

14         The remaining allegations, Plaintiff's statements to Defendant Smith, are too vague

15   to support the alleged constitutional violation.  Plaintiff states that he spoke with Defendant

16   Smith several times and told him that Hopkins "did not appear to be mentally sound," "didn't

17   look stable," and made strange comments, including stating "I'm gonna get you."  ECF No.

18   8 at 11-12.  Plaintiff further alleges that Defendant Smith responded with comments like "Oh

19   he's just a little crazy, but we got to house him" and "you can handle yourself."  Id. at 12.

20   While these statements indicate Plaintiff's preference not to be housed with Hopkins and his

21   concern that Hopkins has mental issues, they do not indicate that Plaintiff told Smith that

22   he believed Hopkins presented a real danger to his safety, nor do they indicate that Smith

23   believed that Hopkins presented a real danger to Plaintiff.

24         Taken together and viewed in the light most favorable to Plaintiff, Plaintiff's

25   allegations and the circumstantial evidence indicate that Defendant Smith knew that Plaintiff

26   was being celled with an inmate who had ben moved out of another cell after exhibiting odd,

27   but non-aggressive, behavior, that the cellmate had some mental issues, and that the

28   inmate told Plaintiff that he was "gonna get" him.  Based on these allegations, the Court

cannot find that Defendant Smith was aware of and disregarded an excessive risk to Plaintiff's safety. Plaintiff does not allege that Defendant Smith knew that Hopkins was supposed to be single celled or that he was unclassified and should not have been housed with other inmates[4]. ECF No. 8. Plaintiff also fails to allege that Defendant Smith had any knowledge that Hopkins had raped or been violent towards his previous cellmates. Id. That Defendant Smith knew that Plaintiff did not want to be celled with Hopkins and that Hopkins behaved strangely is not sufficient to allege that Defendant Smith was deliberately indifferent to Plaintiff's substantial risk of serious harm.

The Court therefore **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's claim of deliberate indifference against Defendant Smith be **GRANTED WITH LEAVE TO AMEND**. See Moss v. U.S. Secret Service, 572 F.3d 962, 972 (9th Cir. 2009) (dismissing complaint but granting plaintiffs leave to amend in accordance with new pleading standards); see also Ramirez, 334 F.3d at 861 (court must grant a *pro se* plaintiff leave to amend his complaint "unless the pleading could not possibly be cured by the allegation of other facts") (citing Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc)).

## b. *Defendants Abad and Cortez*

Plaintiff alleges that Defendant Abad knew that Plaintiff was facing a substantial risk of serious harm from Hopkins because Plaintiff specifically told Defendant Abad that he did not feel safe being celled with Hopkins and that Hopkins was behaving strangely. ECF No. 8 at 12. Plaintiff further alleges that Defendants Abad and Cortez knew that Hopkins was supposed be single celled because he heard Defendant Abad tell that fact to Defendant Cortez. Id. Plaintiff also alleges that immediately after making that statement, Defendants Abad and Cortez had a private conversation and then Defendant Abad told Plaintiff that Hopkins was not yet classified, that Abad would see what he could do, that Plaintiff was "stuck" with Hopkins, and that Plaintiff would have to "wait it out." Id. at 12-13. Finally,

---

[4]Plaintiff does make this claim in his opposition [ECF No. 29 at 9], but when considering a motion to dismiss, the Court "may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." See Schneider v. California Dep't of Corrs., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis in original).

1   Plaintiff alleges that Defendant Cortez knew that Hopkins had a history of raping his
2   cellmates and was supposed to be single-celled. Id. at 14.

3        Interpreting the facts and circumstantial evidence in the light most favorable to
4   Plaintiff, Plaintiff alleges that Defendants Abad and Cortez knew that Hopkins was supposed
5   to be single-celled because he heard them discuss it.  Plaintiff also alleges that they had a
6   private discussion and then Defendant Abad told Plaintiff that he would have to "wait it out."
7   From these factual allegations, the Court can infer that Defendants Abad and Cortez knew
8   that Plaintiff was facing a substantial risk of serious harm from Hopkins and that they chose
9   to ignore the risk.[5] See Bowman v. Washington, 2010 WL 597466, *1-2 (W.D.Wash. Feb.
10  16, 2010) (finding that Plaintiff pled a prima facie case of deliberate indifference to
11  withstand defendant's motion to dismiss where Plaintiff alleged that prison officials were
12  deliberately indifferent to his safety when they housed him with a violent inmate who threw
13  an object at him and as a result permanently injured him); see also Berg, 794 F.2d 457
14  (denying defendant's motion for summary judgment and finding prima facie case of
15  deliberate indifference where inmate told prison official his life was in danger if he went to
16  his work assignment, but the official ignored his complaint and sent him to work, where he
17  was beaten and raped by his cell partner).   As such, Plaintiff has alleged sufficient facts to
18  state a claim for deliberate indifference.

19       The Court therefore **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's
20  claim of deliberate indifference against Defendants Abad and Cortez be **DENIED**.

21                     c.   *Defendants Contreras and Marrero*

22       Plaintiff does not allege that Defendants Contreras and Marrero personally
23  participated in the deliberate indifference constitutional violation.  ECF No. 8 at 11-14.
24  Rather, Plaintiff alleges that Defendants Contreras and Marrero implemented practices and
25  polices and provided training, guidance and supervision to other Defendants that allowed

26  _____

27       [5]Plaintiff's allegation that Defendant Cortez knew that Hopkins had a history of raping his cellmates
    and therefore should be single-celled further supports Plaintiff's claim.  However, the Court cannot consider
28  it because it is plead in a conclusory manner.  Iqbal, 129 S.Ct. at 1949.  Plaintiff does not state any facts
    supporting his bald accusation that Defendant Cortez "knew" this fact.

the rape to be committed.  Id.  Defendants respond that the claims against Defendants Contreras and Marrero should be dismissed "for lack of personal involvement and/or causation."  ECF Nos. 24-1 at 10-12; 30 at 5-6.

There generally is no liability under section 1983 based on *respondeat superior* or another theory of vicarious liability; the plaintiff must demonstrate that the defendant personally participated in the alleged denial of rights.  See Iqbal, 129 S.Ct. at 1948 (citing Monell v. Dep't of Soc. Serv. of the City of New York, 436 U.S. 658, 691-94 (1978)); see also Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  However, a "supervisor can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) conduct that showed a reckless or callous indifference to the rights of others."  Edgerly v. City and County of San Francisco, 599 F.3d 946, 961 (9th Cir. 2010) (quoting Cunningham v. Gates, 229 F.3d 1271, 1292 (9th Cir. 2000)).  If, however, there is no affirmative link between the defendant's conduct and the alleged injury, the defendant will not be not liable for any deprivation of the plaintiff's constitutional rights.  Rizzo v. Goode, 423 U.S. 362, 370-71 (1976).

Additionally, a "plaintiff may hold a supervisory defendant liable based on an unconstitutional policy if he alleges facts indicating that the defendant implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  Lee v. Alameida,  2010 WL 2629800, *2 (E.D. Cal. 2010) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)).  "Official policy often refers to formal rules or understandings-often but not always committed to writing-that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently over time."  Id. at *3 (quoting Pembaur v. City of Cincinatti, 475 U.S. 469, 481 (1986)).

Here, Plaintiff alleges that Defendant Contreras was the Associate Warden at R.J. Donovan Correctional Facility and, as such, responsible for the policies and practices implemented for inmates who were high security risks.  ECF No. 8 at 7.  Plaintiff also alleges

that Defendant Contreras was responsible for the training, guidance, supervision and control of subordinates such as Defendants Marrero, Smith and Abad.  Id.  Finally, Plaintiff alleges that Defendant Contreras knew that Hopkins had a history of raping his cellmates and was supposed to have single-cell status.  Id. at 14.  While Plaintiff argues in his pleadings that Defendant Contreras "created and implemented the policies and practices" to ignore the single-cell designations in order to ease overcrowding, the FAC contains no such allegation.

Plaintiff further alleges that as a Correctional Captain at R.J. Donovan Correctional Facility, Defendant Marrero was responsible for: (1) executing "the policies and practices of general population and ad/seg release detainments for committee referrals and program recommendations;" (2) the "critical safety security and treatment of all Facility 3 placement inmates;" and (3) "the immediate resolve of custody issues of housing security and safety of all Facility 3 inmates."  ECF No. 8 at 6.  Plaintiff also alleges that Defendant Marrero is responsible for the "training, guidance, supervision and control of all subordinate Correctional Counselors, [and] Correctional Officers."  Id.  Plaintiff alleges that Defendant Marrero worked with other defendants to implement a policy "to ignore such critical case factors as single cell S Suffix to fill up any empty bed so as to reduce the over crowding."  Id. at 14.  Plaintiff alleges that this policy "lead directly" to his being drugged and raped.  Id.

Plaintiff's conclusory and incomplete allegations do not state a claim against Defendants Contreras and Marrero.  Plaintiff does not allege that either defendant personally participated in the alleged denial of his constitutional rights.  Plaintiff also does not clearly identify which defendant or defendants created and implemented the policies at issue in this case,[6] nor does Plaintiff clearly identify the specific policy at issue in this case (e.g., a policy

---

[6]Plaintiff alternatively states that Defendant Marrero was responsible for executing policies (ECF No. 8 at 6) and for implementing policies (id. at 14) and Defendant Contreras was responsible for implementing policies (id. at 7) but did not implement the policy at issue in this case (id. at 14).  As such, the FAC does not clearly allege which defendant is responsible for which conduct.  Moreover, a supervisory defendant cannot be held responsible merely for executing a policy.  See Redman v. County of San Diego, 942 F.2d 1435, 1449 (9th Cir. 1991) (opining that just because and individual defendant "was familiar with the policies and procedures, and implemented them as required by his supervisor, does not afford a basis for holding him liable as a policymaker under § 1983").

to double-cell inmates who have single-cell designations or a policy to double-cell inmates who have not yet been designated).  Also, if Plaintiff is alleging conduct other than a significantly deficient policy that warrants supervisory liability, he fails to adequately identify and allege the misconduct.  Finally, Plaintiff's allegations are conclusory and vague.  If Plaintiff wants to re-allege constitutional violations against these defendants, Plaintiff should bear in mind that defendants can only be liable for their own misconduct.  See Iqbal, 129 S.Ct. at 1948.  Plaintiff must plead facts alleging that Defendants Contreras and Marrero violated the constitution through their own individual actions.  Id.  Plaintiff will not satisfy the pleading requirements of Iqbal merely by alleging that one of the Defendants was the "architect" of an unconstitutional policy which the other Defendant executed.  Id. at 1951 (stating that Plaintiff's allegations that Ashcroft was the "principle architect" of an invidious policy that Mueller adopted and executed were "bare assertions" that were "conclusory and not entitled to be assumed true") (citing Twombly, 550 U.S. at 554-55).  Plaintiff must clearly state the facts, not merely conclusions, supporting his allegations.  Iqbal, 129 S.Ct. at 1949 (While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice.).

This Court therefore **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's claim against Defendants Contreras and Marrero be **GRANTED WITH LEAVE TO AMEND.**

## C.        Fourteenth Amendment - Due Process

Plaintiff asserts that the conduct of Defendants Cortez, Marrero, and Contreras also violated his Fourteenth Amendment right to "procedural protection".  ECF No. 8. at 12.  In response, Defendants state that Plaintiff's Fourteenth Amendment claims should be dismissed because any protection afforded prisoners by the Fourteenth Amendment "is, at best, redundant of that provided by the Eighth Amendment."  ECF No. 24-1 at 14.

The exact nature of Plaintiff's Fourteenth Amendment allegations is not clear from the complaint.  If Plaintiff is alleging that his substantive due process rights were violated, he has failed to state such a claim.  "While the Eighth Amendment governs claims brought by convicted prisoners, the Due Process Clause governs failure-to-protect claims filed by

pretrial detainees and civilly-committed individuals." See Becker, 2008 WL 802933 at *8 (citing Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977) and Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004)).  Because Plaintiff was a convicted prisoner at the time of the allegedly unconstitutional actions, his claims arise solely under the Eighth Amendment. See Ingraham, 430 U.S. at 671 n.40; see also County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)) (finding that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process").

If Plaintiff is alleging that his procedural due process rights were violated, he also has failed to state such a claim.  The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law.  See U.S. Const. XIV, § 1;  see also Becker, 2008 WL 802933 at *9 (citing Wolff v. McDonnell, 418 U.S. 539, 556 (1974)).  A person asserting a violation of the right to due process must first allege facts showing that they were deprived of an interest cognizable under the Due Process Clause or state law.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989); Board of Regents v. Roth, 408 U.S. 564, 571 (1972).  Liberty interests in the prison context are generally limited to freedom from restraints that "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  Even severe hardship does not rise to the level of a constitutional violation unless it is both atypical and significant.  Id.

Here, Plaintiff has not, and cannot allege facts supporting the existence of any protected liberty interest.  If Plaintiff is arguing that he had a right to be single celled while Hopkins's classification status was being determined, there is no such liberty interest.  See White v. Carasco, 2010 U.S. Dist. LEXIS 9785, *4 (E.D. Cal. Feb. 4, 2010) (stating that "double celling is not a condition that materially differs from conditions faced by inmates in purely discretionary segregation or general population"); see also Wiseman v. Hernandez, 2009 U.S. Dist. LEXIS 125386, *48 (S.D. Cal. Nov. 24, 2009) (finding that Plaintiff failed to

allege atypical and significant hardship and that "there is not liberty interest in having single cell status"); and <u>Williams v. State of California</u>, 2008 U.S. Dist. LEXIS 22602, *7 (E.D. Cal. Mar. 6, 2008) (stating that "generally, prison classifications do not give rise to a federal liberty interest") (citing <u>Hernandez v. Johnston</u>, 833 F.2d 1316, 1318 (9th Cir. 1987)).

Similarly, Plaintiff does not have a liberty interest in selecting his cellmate.  <u>See</u> <u>Bjorlin v. Hubbard</u>, 2010 WL 457685, *1 (E.D. Cal. Feb. 4, 2010) (stating "nor even if Plaintiff has been placed with a cellmate not of his own choosing would his right to due process be implicated"); <u>see also</u> <u>Allen v. Figueroa</u>, 56 F.3d. 70, *7 (9th Cir. 1995) (finding that Plaintiff did not have an Eighth Amendment or due process right to be allowed to choose his cellmate for compatibility); and <u>Perez v. Sisto</u>, 2007 WL 1081927, *5 (E.D. Cal. April 6, 2007) ( stating that "in general, prison officials' housing and classification decisions do not give rise to federal constitutional claims encompassed by the protection of liberty and property guaranteed by the Fifth and Fourteenth Amendments") (citing <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569 (1992)).

Plaintiff's substantive due process claim is properly considered under the Eighth Amendment and Plaintiff has not alleged any facts that demonstrate the deprivation of a liberty interest in support of a Fourteenth Amendment procedural due process claim.  This Court therefore **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's Fourteenth Amendment claims against Defendants Cortez, Marrero, and Contreras be **GRANTED WITHOUT LEAVE TO AMEND.**  <u>See</u> <u>Ramirez</u>, 334 F.3d at 861 (court may dismiss without leave to amend if the pleading cannot be cured by the addition of other facts).

**E.      Qualified Immunity**

Defendants argue that "no federal constitutional rights were violated by Defendants" and that even if the Court finds that Plaintiff's rights were violated, Defendants are entitled to qualified immunity because they reasonably believed that their actions were lawful and "would not have been on notice that their conduct was unlawful."  ECF No. 24-1 at 12-13.  Plaintiff responds that Defendants Marrero, Contreras and Cortez are not entitled to qualified immunity because they implemented an unreasonable policy requiring their

subordinates to house inmates without considering critical case factors.  ECF No. 29 at 15.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.  Anderson v. Creighton, 483 U.S. 635, 638-40 (1987).  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"  Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)), abrogated on other grounds by Pearson v. Callahan, 129 S. Ct. 808 (2009).  This privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Id. at 200-01 (quoting Mitchell, 472 U.S. at 526).  Thus, the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  Id. at 201 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)).

In Saucier, the Supreme Court established a two-step inquiry for determining whether an official is entitled to qualified immunity.  Pearson, 129 S. Ct. at 815-16; Saucier, 533 U.S. at 201.  First, the court was directed to consider whether, "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right."  Saucier, 533 U.S. at 201.  If a constitutional right would have been violated were the allegations established, the Saucier Court instructed lower courts to next examine whether the right was clearly established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 201-02.  If an officer makes a reasonable mistake as to what the law requires - i.e. the right is not clearly established - the officer is entitled to immunity.  Id. at 202-03.  The Supreme Court subsequently determined that "while the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory."  Pearson, 129 S. Ct. at 818.  Instead, lower courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Id.

1.      Defendants Smith, Contreras, and Marrero

Here, Plaintiff has not alleged facts in his complaint which could "make out a violation of a constitutional right" by Defendants Smith, Contreras, and Marrero. Pearson, 129 S.Ct. at 815-16.  As set forth above, the Court has recommended that the Eighth Amendment claims asserted against Defendants Smith, Contreras, and Marrero be dismissed with leave to amend. See, supra at 9 and 13.  Because there are no viable claims alleged against Defendants Smith, Contreras, and Marrero, the Court is unable to evaluate whether they are entitled to qualified immunity for the alleged conduct.  Unless and until Plaintiff alleges a constitutional violation, there can be no determination regarding the applicability of qualified immunity.  As stated by the Supreme Court, "if no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity" Saucier, 533 U.S. at 201; see also Robinson, 278 F.3d at 1013; and Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) (quoting Kwai Fun Wong v. United States, 373 F.3d 952, 957 (9th Cir. 2004)) (recognizing that "a motion to dismiss on qualified immunity grounds puts the court in the difficult position of deciding 'far-reaching constitutional questions on a non-existent factual record' and that while 'government officials have the right … to raise … qualified immunity defense on a motion to dismiss, the exercise of that authority is not a wise choice in every case'").

Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's claim against Defendants Smith, Contreras, and Marrero on qualified immunity grounds be **DENIED WITHOUT PREJUDICE**.

2.      Defendants Abad and Cortez

Plaintiff has alleged facts in his FAC which could "make out a violation of a constitutional right" by Defendants Abad and Cortez. Pearson, 129 S.Ct. at 815-16. Interpreting the facts in the light most sympathetic to Plaintiff, Plaintiff alleges that Defendant Abad knew that he was facing a substantial risk of serious harm from Hopkins because he specifically told Defendant Abad that he did not feel safe being celled with Hopkins and that Hopkins was behaving strangely. ECF No. 8 at 12.  Plaintiff further alleges

that Defendants Abad and Cortez knew that Hopkins was supposed be single celled because he heard Defendant Abad tell that fact to Defendant Cortez. Id. Plaintiff also alleges that immediately after making that statement, Defendants Abad and Cortez had a private conversation and then Defendant Abad told Plaintiff that Hopkins was not yet classified, that Abad would see what he could do, that Plaintiff was "stuck" with Hopkins, and that Plaintiff would have to "wait it out." Id. at 12-13. Finally, Plaintiff alleges that Defendant Cortez knew that Hopkins had a history of raping his cellmates and was supposed to be single-celled. Id. at 14. As discussed above (supra at 9-10), when the facts are construed in this manner, they allege that Defendants Abad and Cortez violated Plaintiff's constitutional rights under the Eighth Amendment. See Bowman, 2010 WL 597466 at *1-2 (finding that Plaintiff pled a prima facie case of an Eighth Amendment violation where Plaintiff alleged that prison officials were deliberately indifferent to his safety when they housed him with a violent inmate who injured him).

Given that Plaintiff has satisfied the threshold requirement of a constitutional violation, the Court must next consider whether Plaintiff's right was clearly established at the time Defendants violated that right, and if the Defendants would know their actions violated clearly established law. Pearson, 129 S.Ct. 808. At the time of Plaintiff's rights violations, it was clearly established that prisoners have a right to protection and that "prison officials have a duty to take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir.1982) *abrogated in part on other grounds by* Sandin, 515 U.S. 472; see also Farmer, 511 U.S. at 833 ("prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners").

"The analytical problem facing the court is that there is a subjective element to an Eighth Amendment violation. When the underlying alleged constitutional violation contains an intent element, the normal qualified immunity analysis is difficult to apply." Marks v. Gephardt, 2008 WL 618632, *6 (W.D.Wash., March 3, 2008).[7] An Eighth Amendment failure

---

[7] see also Bowman, 2010 WL 597466 at *2 (stating that "while qualified immunity is generally decided on objective facts, when motivation or intent is a component of the alleged violation the plaintiff must be

to prevent harm violation contains a deliberate indifference component. Id. Thus, the state of mind or subjective intent of Defendants Abad and Cortez is an element of the violation. Whether the Defendants actions were constitutional and whether they are entitled to qualified immunity turns in part on their subjective mental states in this situation.  As in Marks, at the motion to dismiss stage, the court has no record of the Defendants thought processes or statements from them to consider.  Therefore, whether Defendants Abad and Cortez are entitled to qualified immunity requires the court to consider a greater record than is now before it.

Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's claim against Defendants Abad and Cortez on qualified immunity grounds be **DENIED WITHOUT PREJUDICE**.

**F.**    **Injunctive Relief**

Plaintiff is seeking injunctive relief that would require Defendants to "provide single cell status to the Plaintiff during these proceedings as the practice of housing classified inmates and nonclassified inmates continues to date also that the Plaintiff not suffer any adverse actions from R.J. Donovan Correctional Staff as a result of this suit." ECF No. 8 at 19.  Defendant argues that Plaintiff is not entitled to injunctive relief because his request is unnecessary since the United States and California constitutions protect him from retaliation, and he has not demonstrated a likelihood of irreparable injury.  ECF No. 24-1 at 14.

The Eleventh Amendment does permit "suits for prospective injunctive relief against state officials acting in violation of federal law." Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004).  However, injunctive relief is available if there is a "real or immediate

_____

given the opportunity to submit proof regarding intent," and finding that since the intent of a defendant is an element of an Eighth Amendment claim, Plaintiff should be given the opportunity to conduct limited discovery. Also finding that the qualified immunity issue could not be decided at the motion to dismiss stage of the proceedings) (citing Tribble v. Gardner, 860 F.2d 321, 326 (9th Cir.1988)); and Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002) (recognizing that "Eighth Amendment claims depend in part on a subjective test that does not fit easily with the qualified immunity inquiry"); but see Buckheit v. Dennis, 2010 WL 1998767, *12 (N.D.Cal. May 18, 2010) (concluding that the allegations of discriminatory intent at the motion to dismiss stage of the proceeding were sufficient to defeat a defense of qualified immunity, where plaintiff alleged that defendants harbored ill intent and intentionally discriminated against him by arresting him on account of his gender).

threat that the plaintiff will be wronged again." City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983).  Accordingly, injunctive relief is appropriate only when "irreparable injury" is threatened.  Id.  To establish irreparable injury, a plaintiff must demonstrate a "real or immediate threat that the[y] will be wronged again-a 'likelihood of substantial and immediate irreparable injury." Id.  "A state law enforcement agency may be enjoined from committing constitutional violations where there is proof that officers within the agency have engaged in a persistent pattern of misconduct." Gomez v. Vernon, 255 F.3d 1118, 1129 (9th Cir. 2001) (quoting Thomas v. County of Los Angeles, 978 F.2d 504, 508 (9th Cir.1992)); see also Walters v. Reno, 145 F.3d 1032, 1048 (9th Cir. 1998) ("Injunctive relief is appropriate in cases involving challenges to government policies resulting in a pattern of constitutional violations").

The standard for injunctive relief must be considered in conjunction with the Prison Litigation Reform Act ("PLRA").  Under the PLRA, the court must find that the prospective relief is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right," before granting injunctive relief.  18 U.S.C. § 3626(a)(1); see also Gomez, 255 F.3d at 1128-9.  Additionally, the court must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." Id.; see also Oluwa v. Gomez, 133 F.3d 1237, 1239 (9th Cir.1998) (quoting 18 U.S.C. § 3626(a)(1)) (holding that Congress explicitly prescribed section 3626's reach to include pending cases).[8]

Here, Plaintiff has not alleged that the officers have threatened to retaliate against him or commented in any way on Plaintiff's filing of the instant lawsuit.  Therefore, the Court

---

[8]The PLRA provides, in relevant part: Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.  18 U.S.C. § 3626(a)(1)(A).

finds that Plaintiff has demonstrated no real or immediate threat of retaliation, adverse actions or irreparable injury.  Moreover, applicable law already prohibits Defendants from retaliating against Plaintiff for exercising his First Amendment right to court access.  See Lytle v. Wondrash, 182 F.3d 1083, 1090 (9th Cir. 1999) (confirming that individuals have clearly established right to be free from retaliation for exercising First Amendment right of access to the courts).

With respect to Plaintiff's request for single cell status, Plaintiff's request is too broad and not narrowly drawn.  Furthermore, Plaintiff has not demonstrated the likelihood of irreparable injury required for injunctive relief.  In fact, since the alleged rape, Plaintiff has roomed with two different unclassified inmates and does not allege that he has been injured or threatened as a result of not being single celled.  ECF. No. 29 at 18.

Accordingly, the Court **RECOMMENDS** that Plaintiff's request for injunctive relief be **DENIED**.

## G.     Motion to Amend Complaint

Plaintiff submitted a "Motion to Amend First Amended Complaint" filed *nunc pro tunc* on May 10, 2010.  ECF No. 32.  Plaintiff seeks to amend his complaint to name individual defendants within Defendants Office of Watch Commander and Office of Registered Nurses, and to name the individual who was the Defendant Chief Medical Officer. Id. at 1-2.  Additionally, Plaintiff wants to serve Defendant Silvia H. Garcia once he is able to locate her since she is no longer working at R.J. Donovan Correctional Facility.  Id. at 2-3. As of the date of the Motion, Plaintiff had only obtained the name of the Chief Medical Officer and was relying on the internet research of his family to locate Defendant Silvia Garcia.  Id.

Fed.R.Civ.P. 15(a) provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  The propriety of granting a motion for leave to amend is generally determined by analysis of several factors: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party.  Hurn v. Retirement Fund

Trust of Plumbing, Heating and Piping Indus. of S. Cal., 648 F.2d 1252, 1254 (9th Cir. 1981). Defendants do not argue that amendment would result in prejudice or undue delay, or that Plaintiff's request for leave to amend is futile or the result of bad faith.

Therefore, this Court **RECOMMENDS** that Plaintiff's "Motion to Amend First Amended Complaint" be **GRANTED**.  However, given the Court's recommendations in the instant Report & Recommendation, amendment is premature at this time.  Following District Judge Sammartino's ruling on this Report & Recommendation, and assuming Plaintiff is granted leave to amend, Plaintiff will be free to add additional defendants when he files his Second Amended Complaint addressing the deficiencies discussed in this Report & Recommendation. If Plaintiff files a Second Amended Complaint, the Second Amended Complaint should incorporate the changes discussed in the Motion to Amend First Amended Complaint.

**H.**      **Summary of Recommendations**

To summarize the foregoing, the Court recommends that:

- Defendants' motion to dismiss Plaintiff's deliberate indifference claim against Defendant Smith be **GRANTED WITH LEAVE TO AMEND**;

- Defendants' motion to dismiss Plaintiff's deliberate indifference claim against Defendants Abad and Cortez be **DENIED**;

- Defendants' motion to dismiss Plaintiff's deliberate indifference claim against Defendants Marrero and Contreras be **GRANTED WITH LEAVE TO AMEND**;

- Defendants' motion to dismiss Plaintiff's Fourteenth Amendment claims against Defendants Cortez, Marrero, and Contreras be **GRANTED WITHOUT LEAVE TO AMEND**;

- Defendants' motion to dismiss Plaintiff's claims against all Defendants on qualified immunity grounds be **DENIED WITHOUT PREJUDICE;**

- Plaintiff's request for injunctive relief be **DENIED**; and

- Plaintiff's motion to amend the complaint be **GRANTED**.

1

**CONCLUSION**

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) **GRANTING IN PART AND DENYING IN PART** Defendants' Motion to Dismiss; and (3) **GRANTING** Plaintiff's Motion to Amend First Amended Complaint.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than November 30, 2010**.   The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than December 21, 2010.**   The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

DATED:  November 9, 2010

_Barbara L. Major_

BARBARA L. MAJOR
United States Magistrate Judge