# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUSTAFA WRIGHT,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>N GRANNIS, SILVA H GARCIA, E.A. CONTRERAS, OFFICE OF WATCH COMMANDER, E MARRERO, CHIEF MEDICAL OFFICER, OFFICE OF REGISTERED NURSES, P.A. CORTEZ, ABAD, D SMITH,<br><br>　　　　　　　　Defendant. | CASE NO. 09-CV-2566 JLS (BLM)<br><br>**ORDER: (1) ADOPTING REPORT AND RECOMMENDATION; (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; (3) GRANTING PLAINTIFF'S MOTION TO AMEND**<br><br>(Doc. Nos. 35, 37) |

　　　Presently before the Court is Magistrate Judge Barbara L. Major's report and recommendation (R&R) advising this Court to grant in part and deny in part Defendants' motion to dismiss Plaintiff's first amended complaint, and grant Plaintiff's motion to amend. (Doc. No. 35 (R&R).) Also before the Court are Plaintiff's objections to the R&R. (Doc. No. 37 (Objections).) Having considered the parties' arguments and the law, the Court **ADOPTS** the R&R, **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss, and **GRANTS** Plaintiff's motion to amend.

## BACKGROUND

　　　Plaintiff, a state prisoner incarcerated at Richard J. Donovan Correctional Facility (Donovan) in San Diego, California, alleges that Defendants violated his Eighth Amendment right to freedom

1  from cruel and unusual punishment and his Fourteenth Amendment right to procedural due process.
2  (Doc. No. 8 (FAC) 11–12.)

3  According to Plaintiff, after Defendant Smith, a Donovan correctional officer, brought
4  Hopkins, another Donovan inmate, into Plaintiff's cell, Plaintiff immediately voiced his reluctance
5  to be housed with Hopkins because Hopkins seemed mentally unsound. (*Id.* at 11.) Defendant Smith
6  responded that Hopkins was "just a little crazy" but, nevertheless, needed to be housed. (*Id.*)
7  Although Plaintiff insisted that he did not want to share a cell with Hopkins, Defendant Smith told
8  Plaintiff that "[he] [could] handle [him]self" and promptly left. (*Id.*) Plaintiff later informed
9  Defendant Smith that Hopkins had threatened him. (*Id.* at 12.)

10  After Plaintiff's pleas to Defendant Smith went unanswered, Plaintiff told Defendant Abad that
11  he "did not feel safe with Hopkins in the cell." (*Id.*) Defendant Abad disregarded Plaintiff's concerns
12  and threatened him with solitary confinement. (*Id.*) The next day, Plaintiff returned to Defendant
13  Abad's office and asked to have Hopkins removed from his cell because of his strange behavior. (*Id.*)
14  According to Plaintiff, Defendant Abad called Defendant Cortez and informed him that Hopkins had
15  "previously [been] ordered single celled." (*Id.*) Defendant Abad then asked Plaintiff to step out of
16  the office. (*Id.*) After Defendant Abad summoned Plaintiff back, he told Plaintiff that Hopkins had
17  not been classified and that Plaintiff "was stuck with him" until the committee decided what it could
18  do. (*Id.* at 13.) Although Plaintiff complained that he should not be housed with Hopkins if he was
19  not classified, Defendant Abad told him to "just wait it out." (*Id.*)

20  Throughout June 10, 2008, Plaintiff experienced pain around his rectum but was uncertain of
21  the cause. (*Id.* at 14.) According to Plaintiff, as he was preparing to take a nap later that day, he saw
22  Hopkins "attempting to pour some of his medication into [Plaintiff's] coffee mug." (*Id.*) Then, it
23  dawned on Plaintiff that Hopkins might have drugged and sexually assaulted him. (*Id.*)

24  Plaintiff alleges that several correctional staff at Donovan, including Defendants Cortez and
25  Contreras, knew that Hopkins had a history of sexually assaulting his cellmates and that he was
26  supposed to be housed in a single cell. (*Id.*) Additionally, Defendants Garcia, Marrero, and Office
27  of Watch Commander allegedly had a policy of ignoring the single cell status of prisoners to ease
28  prison overcrowding. (*Id.*) Further, Plaintiff contends that Defendant Office of Registered Nurses

1  allowed Hopkins to leave the medical area without swallowing his medication, thus allowing him to
2  later drug and sexually assault Plaintiff.

3  Plaintiff filed the operative complaint, his first amended complaint (FAC), on January 27,
4  2010, and on April 1, 2010, Defendants filed a motion to dismiss (Doc. No. 24).  On May 5, 2010,
5  Plaintiff filed an opposition to the motion to dismiss.  (Doc. No. 29.)  Defendants filed a reply on the
6  same day.  (Doc. No. 30.)  On May 10, 2010, Plaintiff filed a motion to amend his first amended
7  complaint.  (Doc. No. 32.)   Judge Major issued an R&R on November 9, 2010 advising this Court
8  to grant in part and deny in part Defendants' motion to dismiss and grant Plaintiff's motion to amend.
9  (Doc. No. 35.)  Plaintiff objected to the R&R on December 7, 2010.  (Doc. No. 37.)

10 **LEGAL STANDARD**

11 **1.      Review of the Report and Recommendation**

12 Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1) set forth a
13 district court's duties regarding a magistrate judge's report and recommendation.  The district court
14 "shall make a de novo determination of those portions of the report . . . to which objection is made,"
15 and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the
16 magistrate judge." 28 U.S.C. § 636(b)(1)(c); *see also United States v. Raddatz*, 447 U.S. 667, 673–76
17 (1980).  However, in the absence of a timely objection, "the Court need only satisfy itself that there
18 is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72,
19 advisory committee's note (citing *Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974)).

20 **2.      Motion to Dismiss**

21 Federal Rule of Civil Procedure 12(b)(6) allows a party to assert by motion the defense that
22 the complaint "fail[s] to state a claim upon which relief can be granted," generally known as a motion
23 to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and sufficient
24 facts pursuant to Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of
25 the claim" showing that the pleader is entitled to relief.  Although Rule 8 "does not require 'detailed
26 factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-
27 harmed-me accusation." *Ashcroft v. Iqbal*, — U.S.—, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl.*
28 *Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the

1 'grounds' for his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic
2 recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan*
3 *v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]'
4 devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

5 "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted
6 as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at
7 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pleaded "allow[]
8 the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*
9 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must
10 be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely
11 consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting
12 *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained
13 in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial
14 experience and common sense." *Id.* at 1950. "[W]here the well-pleaded facts do not permit the court
15 to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not
16 'show[n]'— 'that the pleader is entitled to relief.'" *Id.*

17 If a motion to dismiss is granted, "leave to amend should be granted 'unless the court
18 determines that the allegation of other facts consistent with the challenged pleading could not possibly
19 cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting
20 *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other
21 words, the Court may deny leave to amend if amendment would be futile. *See id.*; *Schreiber Distrib.*,
22 806 F.2d at 1401.

23 **3.      Eighth Amendment Deliberate Indifference**

24 The state has an obligation to "assume some responsibility for [an inmate's] safety and general
25 well-being." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). As part
26 of this obligation, the state has a duty to protect an inmate against assaults by other inmates because
27 incarceration, by its very nature, forecloses an inmate's ability to seek outside aid and restricts an
28 inmate's ability to protect himself. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Although an

inmate will naturally be exposed to harsh and uncomfortable conditions, "gratuitously allowing the beating or rape of one prisoner by another serves no 'legitimate penological objective.'" *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 548 (1984)).

Not every injury or threatened injury rises to the level of an Eighth Amendment violation. *Farmer*, 511 U.S. at 834. Rather, a prison official violates the Eighth Amendment only if two conditions are met. *Id.* First, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 34–35 (1993)). Second, the prison official must have acted or failed to act with "'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 301–302). Under the second prong:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. This standard is one of subjective recklessness. *Id.* at 839–40. Therefore, it is not enough that a reasonable person would have known the risk and that the defendant should have known; rather, the defendant must have acted or failed to act despite knowing of a substantial risk of serious harm. *See id.* at 843 n.8.

## ANALYSIS

**1.    Objections to the R&R's Conclusions Regarding Defendant Smith**

As to Defendant Smith, the R&R recommends that the Defendant's motion to dismiss be granted. (R&R 9.) Judge Major found that Defendant Smith knew of Plaintiff's reluctance to share a cell with Hopkins and that Hopkins was predisposed to strange behavior. (FAC 11.) However, although Plaintiff expressed several times to Defendant Smith that Hopkins "did not appear to be mentally sound," "didn't look stable," and made comments like "I'm gonna get you," Judge Major concluded that these comments were not sufficient to allege that Defendant Smith was deliberately indifferent to a substantial risk of serious harm. (R&R 8–9.)

To establish an Eighth Amendment violation, Plaintiff must allege that Defendant Smith knew that there was a substantial risk of serious harm to Plaintiff and that Defendant Smith acted or failed to act in light of this knowledge. *See Farmer*, 511 U.S. at 835–38. The extent of Plaintiff's

1 conversations with Defendant Smith are summarized as follows: (1) Plaintiff "informed Defendant Smith immediatly [sic] . . . [of his] reluctance to receive Hpokins [sic] in the cell because Hopkins did not appear to be mentally sound"; (2) Defendant Smith responded that Hopkins was "just a little crazy, but we got to house him"; and (3) Plaintiff again informed Defendant Smith that Hopkins did not appear to be stable and that Plaintiff "didn't want to be in the cell with him," to which Defendant Smith replied that Plaintiff could handle himself. (FAC 11.)

Taken together and construed liberally in Plaintiff's favor, these statements merely establish that Defendant Smith knew of Plaintiff's preference not to share a cell with Hopkins and Hopkins's mental health issues. This knowledge, however, simply does not raise an inference that Defendant Smith knew of a substantial risk of serious harm to Plaintiff.

Plaintiff further contends that "[t]he risk in this case was obvious or should have been obvious to [D]efendant Smith." (Objections 3.) However, as stated *supra*, the Court applies a subjective recklessness standard in evaluating Eighth Amendment claims. *See Farmer*, 511 U.S. at 837–38. That the risk was obvious or should have been obvious to Defendant Smith establishes that Defendant Smith was at most negligent in failing to protect Plaintiff. The Court, therefore, cannot find that Defendant Smith was deliberately indifferent in failing to protect Plaintiff. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that mere negligence does not rise to the level of deliberate indifference).

Accordingly, the Court **ADOPTS** Judge Major's R&R with respect to Defendant Smith and **GRANTS** the motion to dismiss as to Defendant Smith.

**2.      Objections to the R&R's Conclusions Regarding Defendants Contreras and Marrero**

As to Defendants Contreras and Marrero, the R&R recommends that Defendants' motion to dismiss be granted. (R&R 13.) Judge Major found that Plaintiff merely set forth conclusory allegations and failed to allege "that Defendants Contreras and Marrero violated the Constitution through their own individual actions." (*Id.*)

In general, liability cannot be imposed "vicariously on governing bodies solely on the basis of the existence of an employer–employee relationship with a tortfeasor." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("There is no respondeat superior liability under section 1983."). To state a claim under § 1983, the

complainant generally must allege that each defendant personally participated in the constitutional deprivation or "set in motion a series of acts by others which the actor [knew] or reasonably should [have] know[n] would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978).

However, a supervisor can be liable for constitutional violations of its subordinates "if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045; *Starr v. Baca*, — F.3d — 2011 WL 477094, at *4 (9th Cir. Feb. 11, 2011) ("[W]here the applicable constitutional standard is deliberate indifference, a plaintiff may state a claim for supervisory liability based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by others."). Additionally, supervisory liability in the absence of personal participation exists if "supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)).

As to Defendant Contreras, Plaintiff objects to the R&R's finding that the FAC contained no allegation that Defendant Contreras "'created and implemented the policies and practices' to ignore single-cell designations in order to ease overcrowding." (R&R 12.) Plaintiff initially contends that Defendant Contreras was "responsible for the policies and practices [CDCR] implement[ed] for high security risk housed inmates," as well as "the immediate trianing [sic], guidance, supervision and control of all subordinates." (FAC 7.) However, Plaintiff also alleges that Defendant Contreras knew "that inmate Hopkins had a history of rapping [sic] his cellmates [sic] and that he was supposed[d] to have an S Suffix for single cell status." (*Id.* at 14.) Therefore, it is unclear what conduct allegedly attributable to Defendant Contreras resulted in the alleged assault.

Further, Plaintiff does not allege that Defendant Contreras played a personal role in Plaintiff's alleged deprivation. Rather, Plaintiff alleges that as Associate Warden, Defendant Contreras was responsible for the overall policies and procedures in place at CDCR, including the supervision and training of all subordinates and concomitantly, the alleged practice of ignoring single cell designations to fill empty beds. These allegations however, fail to establish a causal link to the harm allegedly

1  suffered. Plaintiff cannot overcome a motion to dismiss by simply setting forth vague and conclusory
2  allegations of official participation in civil rights violations. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268
3  (9th Cir. 1982).
4        Plaintiff contends that "[g]iven the opportunity to proceed to the discovery phaze[,] [sic] the
5  [P]laintiff would be more specific." (Objections 4.) Admittedly, while Plaintiff's ability to specify
6  Defendant Contreras's role is limited at this stage, even if Plaintiff were to show that Defendant
7  Contreras had in fact implemented or condoned the policy of disregarding single cell status
8  designations, that both Donovan and the San Diego Sheriff's Department Crime Laboratory's
9  investigations failed to disclose any evidence of rape is fatal to Plaintiff's case. (*See* Doc. No. 8-1 Ex.
10 A, at 15 (stating, in relevant part, "that local investigation had not uncovered any evidence of rape"
11 and that "the Sheriff's findings came back as nnegative [sic]").) Moreover, Plaintiff himself stated
12 that he was unsure if the rape incident really happened or if it was a "vivid nightmare." (FAC 14.)
13 To state a claim for a constitutional violation, Plaintiff must set forth facts proximately connecting
14 Defendants to the injury Plaintiff claims to have suffered; however, the injury Plaintiff claims to have
15 suffered is refuted by both his uncertainty of the events and the negative results of the rape
16 investigation. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Therefore, the Court fails to
17 see how proceeding to discovery would enable Plaintiff to state a cognizable claim against Defendant
18 Contreras.
19       Similarly, with regard to Defendant Marrero, there is no showing that Defendant Marrero
20 personally participated in the deprivation or failed to prevent misconduct by other prison officials of
21 which he was aware. Even if Plaintiff alleged that as correctional captain, Defendant Marrero was
22 responsible for implementing and acquiescing in deficient practices like failing to heed single cell
23 designations, these practices cannot be said to be the moving force behind the alleged constitutional
24 violation. And as previously mentioned, investigations revealed no evidence of rape. *See supra*.
25       In the alternative, to the extent that Plaintiff claims that Defendant Marrero implemented the
26 policy of ignoring single cell designations, Defendant Marrero cannot be responsible for merely
27 implementing a policy. *See Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1449 (9th Cir. 1991)
28 (stating that just because a defendant was "familiar with the policies and procedures, and implemented

them as required by his supervisor, [that] does not afford a basis for holding him liable as a policymaker under § 1983").

Accordingly, the Court **ADOPTS** Judge Major's R&R and **GRANTS** the motion to dismiss as to Defendants Contreras and Marrero.

**3.     Objections to the R&R's Conclusions Regarding Injunctive Relief**

With regards to injunctive relief, the R&R recommends that Plaintiff's request be denied. (R&R 21.) Judge Major found that Plaintiff's request was "too broad and not narrowly drawn," and that Plaintiff had "not demonstrated the likelihood of irreparable injury required for injunctive relief." (*Id.*)

Plaintiff's objections do not address the issues raised by the R&R. Plaintiff still has not narrowly tailored his contentions to demonstrate an immediate threat of retaliation, irreparable injury, or "adverse actions from R.J. Donovan correctional staff as a result of this suit." (FAC 19.) Instead, Plaintiff merely states that even though applicable law precludes retaliating against Plaintiff for exercising his First Amendment right to court access, "there is nothing stoping [sic] the correctional officers . . . from sending the most violent prisoner they can find into the cell with me." (Objections 5.)

Although Plaintiff need not wait for a tragic event in order to seek injunctive relief, Plaintiff has not shown a real or immediate threat of retaliation or injury. *Cf. Helling v. McKinney*, 509 U.S. 29, 33 (1993) (stating that it "would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet has happened to them"). While correctional officers could conceivably house Plaintiff with a violent prisoner, Plaintiff has, subsequent to the alleged rape, shared a cell with two different unclassified inmates and has not been injured or threatened. (R&R 21.) Additionally, there are many factors that influence assaults, and Plaintiff would not necessarily avoid confrontation by being housed with someone other than the "most violent prisoner." *See McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991) (listing several factors that bear on assaults including guards, size of prison, number of separate areas, and other factors beyond control of prison employees).

Plaintiff therefore has failed to plainly illustrate threatened, irreparable injury and requests

relief broader "than necessary to correct the violation of the Federal right." *See* 18 U.S.C. § 3626(a)(1)(A). Without more, the Court cannot simply honor Plaintiff's request to require Defendants to provide Plaintiff single cell status during the proceeding. *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) (stating that the Constitution does not mandate comfortable prisons). Unless Plaintiff can demonstrate a real or immediate threat of being wronged by any prison official as a result of exercising his First Amendment rights, the Court will not involve itself in the "minutiae of the daily affairs of prisons." *See Bell v. Wolfish*, 441 U.S. 520, 544 (1979); s*ee also* 18 U.S.C. § 3626(a)(1)(A) ("The [C]ourt shall give substantial weight to any adverse impact on . . . the operation of a criminal justice system caused by the relief.").

Accordingly, the Court **ADOPTS** Judge Major's R&R and **DENIES** Plaintiff's request for injunctive relief.

**4.     Objections to the R&R's Conclusions Regarding  Fourteenth Amendment Claims**

Plaintiff does not object to the R&R's conclusions regarding Plaintiff's Fourteenth Amendment claims against Defendants Cortez, Marrero, and Contreras. Having reviewed the relevant portion of the R&R, the Court finds that it is thorough, well reasoned, and contains no clear error. Accordingly, the Court **ADOPTS IN FULL** section C of the R&R. *See* Fed. R. Civ. P. 72 advisory committee's note. Defendants' motion to dismiss Plaintiff's Fourteenth Amendment claims against Defendants Cortez, Marrero, and Contreras is **GRANTED**.

## CONCLUSION

For the reasons stated, the Court **ADOPTS** the R&R in full. Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's motion to amend is **GRANTED**. Any amended complaint **SHALL BE FILED** <u>within 45 days of the date that this Order is electronically docketed</u>. If no amended complaint is received by that time, the Clerk shall close the file.

**IT IS SO ORDERED.**

DATED: March 14, 2011

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge