# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUSTAFA WRIGHT, <br><br> Plaintiff, <br> vs. <br><br> N. GRANNIS, et al., <br><br> Defendants. | CASE NO. 09cv2566-JLS (MDD) <br><br> REPORT AND RECOMMENDATION RE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT <br><br> [ECF No. 62] |

This Report and Recommendation is submitted to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rules 72.1(c) and 72.3(f) of the United States District Court for the Southern District of California.

**I.  PROCEDURAL HISTORY**

On November 4, 2009, Plaintiff Mustafa Wright, a state prisoner proceeding *pro se* and *in forma pauperis*, filed the instant suit under 42 U.S.C. § 1983 against Correctional Officer D. Smith, Correctional Counselors Abad and P.A. Cortez, the Office of Registered Nurses, the Chief Medical Officer, Correctional Captain E. Marrero, the Office of Watch Commander, Silvia H. Garcia, and E.A. Contreras alleging violations of his Eighth and Fourteenth Amendment rights. (Doc. No. 1). On January 23, 2010, Plaintiff filed a First Amended Complaint ("FAC"). (Doc. No. 8). On April 1, 2010, Defendants Contreras, Marrero, Cortez, Abad, and Smith filed a Motion to Dismiss Plaintiff's FAC. (Doc. No. 29). A Report and Recommendation was issued on

Defendants' Motion, recommending that Defendants' Motion to Dismiss be granted with respect to Plaintiff's claims against Defendants Smith, Marrero, and Contreras, but denied with respect o Defendants Abad and Cortez. (Doc. No. 35). The Report and Recommendation was adopted by the District Court on March 14, 2011. (Doc. No. 50).

On April 27, 2011, Plaintiff filed a Second Amended Complaint ("SAC"), restating his Eighth Amendment claims against Defendants Smith, Abad, Cortez, Marrero, and Contreras. (Doc. No. 53). On May 11, 2011, Defendants Smith, Marrero and Contreras ("Defendants") filed the instant Motion to Dismiss Plaintiff's SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 58). On June 20, 2011, Plaintiff filed a Response in Opposition to Defendants' Motion. (Doc. No. 62). On June 22, 2011, Defendants filed a Reply to Plaintiff's Response. (Doc. No. 63).

**II.    STATEMENT OF FACTS**

The facts are taken as presented in the complaint and are not to be construed as findings of fact by the court.

On June 5, 2008, inmate K. Hopkins was escorted to Plaintiff's cell by Defendant Smith, and Plaintiff was informed that Hopkins was his new cellmate. (SAC at 4). Plaintiff immediately told Smith that he was reluctant to be housed with Hopkins because Hopkins appeared to be mentally disturbed and physically ill. Id. Plaintiff expressed concern for his health and safety if left alone with Hopkins. Id. Smith responded by laughing and telling Plaintiff "He's a little crazy, but we've got to house him." Id.

Plaintiff learned the next day that Hopkins had been moved out of his previous cell because his former cellmate was refusing to re-enter the cell with Hopkins. Id. Plaintiff complained to Smith that Hopkins had been up all night mumbling profanities and threatening Plaintiff with comments like "I'm going to get your ass." Smith dismissed Plaintiff's concerns, telling Plaintiff, "You can handle yourself." Id. at 5.

On June 7, 2008, Plaintiff took his complaint to Counselor Abed. Id. Plaintiff repeated that he did not feel safe with Hopkins, but Abed likewise dismissed Plaintiff's complaint and kicked Plaintiff out of his office. Id. The next day, Plaintiff returned to Abed's office to ask if

1   Hopkins could be moved to another cell. Id. Abed called Cortez and the two spoke in private
2   about Hopkins. Id. When Plaintiff was brought back into Abed's office, he was informed that
3   Hopkins had not been classified yet. Id. Abed told Plaintiff that he would bring Hopkins before
4   the classification committee, but until then Hopkins would remain housed with Plaintiff. Id. at 6.

5   On June 10, 2008, Plaintiff noticed pain around his rectum. Id. Plaintiff also noticed that
6   his sheets and clothes had been changed, but didn't remember changing them. Id. He also woke
7   up later than usual. Id. Plaintiff was fatigued the whole day, and was feeling constipated. Id.
8   Plaintiff attempted to take a nap, but noticed Hopkins pouring medication into Plaintiff's coffee
9   mug. Id. At this point, Plaintiff had a "vivid memory" of events from the night before. Id.
10  Specifically, he remembered seeing Hopkins pour a white powder into his soup when he was
11  distracted by a visitor. Id. at 7. Plaintiff had images of being raped by Hopkins, and being pushed
12  around his cell in a stupor. Id.

13  Plaintiff went to the nurse's station and reported what he remembered. Id. Plaintiff was
14  brought to Alvarado hospital and examined. Id. When he returned, he learned that Hopkins had
15  been placed in administrative segregation at his previous prison for drugging and raping his
16  previous cellmate. Id.

17  **III.  LEGAL STANDARD**

18  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the
19  complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Federal Rule of Civil Procedure
20  8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to
21  relief. Specific facts are not necessary; the statement need only give the defendant fair notice of
22  what the ...claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93
23  (2007) (internal citations omitted). Nevertheless, "[w]hile a complaint attacked by a Rule 12(b)(6)
24  motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the
25  grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic
26  recitation of the elements of a cause of action will not do." Bell v. Twombly, 550 U.S. 544, 555-
27  56 (2007). Thus, while specific detail is not required, every complaint must, at a minimum, plead
28  "enough facts to state a claim for relief that is plausible on its face." Id. at 547; Weber v. Dep't of

1  Veterans Affairs, 521 F.3d 1061, 1066 (9th Cir. 2008).

2  The court must assume the truth of the facts which are presented and construe all
3  inferences from them in the light most favorable to the non-moving party. Thompson v. Davis,
4  295 F.3d 890, 895 (9th Cir. 2002). A *pro se* party's pleadings should be construed liberally. Id.
5  However, "[f]actual allegations must be enough to raise a right to relief above the speculative level
6  on the assumption that all the allegations in the complaint are true." Bell, 127 550 U.S. at 555.
7  Thus, the court is not required to "accept as true allegations that are merely conclusory,
8  unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors,
9  266 F.3d 979, 988 (9th Cir. 2001) (internal citation omitted). Furthermore, the court may not
10 "supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents of the
11 University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

12 **IV.   DISCUSSION**

13 Plaintiff's sole claim in his Second Amended Complaint is that Defendants violated his
14 Eighth Amendment right to be free from cruel and unusual punishment when they refused to
15 transfer Hopkins to another cell, allowing Hopkins to rape him. (SAC at 9). In their Motion,
16 Defendants contend that Plaintiff's claim fails as a matter of law because Plaintiff has not pled
17 sufficient facts to show that any Defendant acted with deliberate indifference to a serious risk of
18 harm that Plaintiff faced. (Doc. No. 58-1 at 5).

19 The Eighth Amendment protection against cruel and unusual punishment ensures that
20 prisoners are kept in conditions compatible with "civilized standards, humanity and decency."
21 Estelle v Gamble, 429 U.S. 97, 102 (1976). Prison officials have a duty to ensure that prisoners
22 are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. See
23 Farmer v. Brennan, 511 U.S. 825, 832 (1994). In order to state a claim under the Eighth
24 Amendment, an inmate must first show that he suffered a deprivation or injury that was
25 "objectively, sufficiently serious[.]" Id. at 834 (internal citations omitted). Second, the plaintiff
26 must show that the prison officials had a "sufficiently culpable state of mind" in that they acted
27 with "deliberate indifference to a substantial risk of serious harm to an inmate." Id.

28 As an initial matter, Plaintiff has met the objective component of his Eighth Amendment

1  claim. Plaintiff alleges that he was drugged and raped in his cell. (Doc. No. 53 at 9). This is a
2  sufficiently serious injury to satisfy the Eighth Amendment. Defendants note that there is no
3  evidence that a rape actually occurred. To the contrary, according to Defendants there is evidence,
4  including the results of a Sheriff's Department investigation, indicating there was no rape. (Doc.
5  No. 63. At 4). However, in a motion under 12(b)(6), the Court must accept the non-moving
6  party's allegations as true. Thompson, 295 F.3d at 895. Thus, the only remaining question for the
7  court is whether Plaintiff has sufficiently established that each Defendant was deliberately
8  indifferent to a substantial risk of harm. Farmer, 511 U.S. at 834.

9       Deliberate indifference requires that an official knows of and disregards an excessive risk
10 to inmate health or safety. Id. at 837. The official must both be aware of facts from which the
11 inference could be drawn that a substantial risk of serious harm exists, and must also draw the
12 inference. Farmer, 511 U.S. at 837. "A plaintiff may make the factual showing that a prison
13 official had the requisite knowledge of a substantial risk in the usual ways, including inference
14 from circumstantial evidence." Id. at 842 (internal citations omitted). A showing of mere
15 negligence is insufficient to establish deliberate indifference. Id. at 837. Even gross negligence
16 does not constitute deliberate indifference. Id. Moreover, "[t]urning a blind eye to the relevant
17 surrounding facts will not shield a prison official from liability." Swan v. United States of
18 America, 159 F. Supp. 2d 1174, 1182 (N.D. Cal 2001). "'If the evidence shows that a [prison
19 official] merely refused to verify underlying facts that he strongly suspected to exist [...], liability
20 may be imposed." Id. at 1182 (citing Farmer, 511 U.S. at 843, n. 8).

21      **1.    Defendant Smith**

22      Plaintiff alleges that Smith acted with deliberate indifference when he ignored Plaintiff's
23 requests to have Hopkins moved and when Smith was made aware of threatening comments that
24 Hopkins made. (Doc. No. 53). Previously, in his FAC, Plaintiff asserted that Smith had acted
25 with deliberate indifference because; (1) Smith was aware that Hopkins had been moved from his
26 previous cell because he had been "acting crazy" and mumbling profanities; (2) Plaintiff informed
27 Smith that Hopkins appeared unstable and had threatened him by saying "I'm going to get your
28 ass."; and (3) Smith acknowledged that Hopkins is "a little crazy, but we got to house him[,]" and

1  told Plaintiff that he could handle himself  Id.  Based on these facts, the District Court dismissed
2  Plaintiff's claim against Smith, finding that, even construed liberally, "these statements merely
3  establish that Defendant Smith knew of Plaintiff's preference not to share a cell with Hopkins and
4  Hopkin's mental health issues.  This knowledge, however, simply does not raise an inference that
5  Defendant Smith knew of a substantial risk of serious harm to Plaintiff."  (Doc. No. 50 at 6).

6  In his SAC, Plaintiff has added no new facts from which an inference could be drawn that
7  Smith was deliberately indifferent to Plaintiff's safety.  While Plaintiff contends that Smith was
8  aware that Hopkins was "unclassified" and had been moved from his previous cell, there is
9  nothing in Plaintiff's SAC to indicate that Smith was aware of a substantial risk of serious,
10 physical harm to Plaintiff.  (SAC at 18).  Specifically, Plaintiff does not contend that Smith was
11 aware of a prior attack by Hopkins on his previous cellmates.  Even construed liberally and in a
12 fashion most favorable to Plaintiff, Plaintiff's claims are too vague and conclusory to survive
13 Defendant's Motion.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  At most, Smith was
14 negligent by not further investigating Hopkins.  However, negligence is not deliberate
15 indifference.  Estelle, 429 U.S. at 106.

16 In his Opposition, Plaintiff states that a risk of harm should have been obvious to Smith
17 because Plaintiff informed Smith of Hopkin's threats.  (Doc. No. 62 at 4).  Again, this line of
18 reasoning was considered and rejected by the District Court when it dismissed Plaintiff's FAC.
19 (Doc. No. 50 at 6).  There is nothing in Plaintiff's claim that establishes that a risk of physical
20 harm to Plaintiff was "obvious" to Smith.  While Smith may have been negligent in addressing
21 Plaintiff's concerns, he was not deliberately indifferent.  Estelle, 429 U.S. at 106.

22 Accordingly, Plaintiff has failed to state a claim under the Eighth Amendment and the
23 Court **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** as to Defendant
24 Smith.

25 Furthermore, dismissal with prejudice is appropriate where a plaintiff has repeatedly failed
26 to cure deficiencies in his pleading.  See Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993).
27 This is Plaintiff's Second Amended Complaint, and he has now had three attempts to state a valid
28 claim against Smith.  Plaintiff has been made aware of the deficiencies in his claim and has failed

1  to cure them. (Doc. No. 50). Specifically, Plaintiff has been made aware that he must show that
2  Smith knew of and disregarded a substantial risk of harm, and not merely that Smith was aware of
3  Plaintiff's aversion to Hopkins or the generalized danger of being in prison. <u>Id.</u> at 5. While the
4  Court is mindful that a pro se Plaintiff should be given every opportunity to amend his complaint,
5  in light of the deficiencies in Plaintiff's claim, Plaintiff's repeated failures to cure these
6  deficiencies, and the strong evidence refuting Plaintiff's claim, the Court **RECOMMENDS** that
7  Plaintiff's claim be **DISMISSED WITH PREJUDICE**.

8 **2.     Defendants Marrero and Contreras**

9  Plaintiff also brings claims against Facility Captain Marrero and Associate Warden
10 Contreras. (SAC at 12). Plaintiff asserts that Marrero and Contreras "failed to insure (sic) that
11 subordinate staff followed proper procedures involving cell assignments to inmates." <u>Id.</u> at 13.
12 Plaintiff explains that various prison regulations and policies regarding how inmates should be
13 assigned to cells were not followed, leading to Hopkins' improper placement in his cell. <u>Id.</u> at 13-
14 15. Plaintiff asserts that these Defendants were deliberately indifferent to his safety because they
15 failed "to instruct and train and control subordinates" in proper prison procedure and policy. <u>Id.</u> at
16 14. Furthermore, Plaintiff states that these Defendants failed to correct the actions of their
17 subordinates and enforce prison policy. <u>Id.</u> Finally, Plaintiff states that Marrero chaired a
18 committee hearing on May 27, 2008, where Plaintiff stated that he was "being pressured by
19 inmates in general population to perform sexual acts[.]" <u>Id.</u> at 16.

20 In their Motion, Defendants state that all of Plaintiff's allegations against Marrero and
21 Contreras were contained in his FAC and were dismissed by the District Court. (Doc. No. 58-1 at
22 7). Defendants contend that Plaintiff has added no new allegations or facts to his SAC that would
23 cure its deficiencies. <u>Id.</u> On the merits of Plaintiff's claim, Defendants assert that Plaintiff has
24 improperly brought a claim for supervisory liability, which is unavailable to Plaintiff's in § 1983
25 cases. (Doc. No. 58-1 at 8). Furthermore, Defendants contend that Plaintiff has not established
26 that either Contreras or Marrero personally participated in any constitutional deprivation of
27 Plaintiff's rights. <u>Id.</u>

28 In his Opposition, Plaintiff counters that Contreras and Marrero had a duty to follow prison

1  rules and regulations, and their failure to do so constitutes reckless indifference to his safety.
2  (Doc. No. 62 at 10). Plaintiff further contends that even though there is no evidence that either
3  Contreras or Marrero created or implemented the policies regarding cell assignment, this is
4  irrelevant since no policy was being followed by prison officials. Id. at 11.

5        Defendants are correct that Plaintiff cannot bring a claim for supervisory liability.
6  "[V]icarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each
7  Government-official defendant, through the official's own individual actions, has violated the
8  Constitution." Iqbal, 129 S.Ct. at 1948. "Government officials may not be held liable for the
9  unconstitutional conduct of their subordinates under a theory of respondeat superior." Id.

10        However, the Ninth Circuit has recognized a theory of direct liability based on the
11  supervisor's "knowledge and acquiescence in unconstitutional conduct by his or her subordinates."
12  See Starr v. Baca, 1011 WL 2988827 at *4. A supervisor is liable in his individual capacity, as
13  required by Iqbal, for "the training, supervision, or control of his subordinates; for his
14  acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous
15  indifference to the rights of others." Id. (citing Watkins v. City of Oakland, 145 F.3d 1087, 1093
16  (9th Cir. 1998)).

17        "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his
18  or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection
19  between the supervisor's wrongful conduct and the constitutional violation." Id. (citing Hansen v.
20  Black, 884 F.2d 642, 646 (9th Cir. 1989)). The requisite casual connection is present when the
21  supervisor sets in motion a series of acts by others or knowingly refuses to terminate a series of
22  acts by others, which the supervisor knows or reasonably should have known would cause others
23  to inflict a constitutional injury." Redman v. County of San Diego, 942 F.2d 1435, 1447 (9th Cir
24  1991); Dubner v. City & County of San Francisco, 266 F.3d 959, 968 (9th Cir. 2001).

25        Defendants are correct that Plaintiff has failed to correct the deficiencies from his FAC.
26  Plaintiff fails to plead that either Marrero or Contreras had any direct involvement in the attack
27  against him. Plaintiff's claim is that Marrero and Contreras failed to properly follow prison
28  procedures. (SAC at 15-16). Plaintiff presents no evidence that either Defendant created or

implemented the policies at issue. Rather, Plaintiff presents vague and conclusory allegations that Contreras and Marrero were responsible for these policies. Without any mention of specific conduct that directly contributed to the attack on Plaintiff, Plaintiff's conclusory allegations are insufficient to survive Defendants' Motion. Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In his Opposition, rather than provide more specific allegations against either Defendant, Plaintiff instead contends that it is irrelevant who implemented the policies at issue, because no policy at all was being followed. (Doc. No. 62 at 11). However, this does nothing to alleviate the Plaintiff's failure to form a casual connection between Defendants and the attack on Plaintiff. As the District Court noted in dismissing Plaintiff's FAC, "Even if Plaintiff alleged that as correctional captain, Defendant Marrero was responsible for implementing and acquiescing in deficient practices like failing to heed single cell designations, these practices cannot be said to be the moving force behind the alleged constitutional violation. And as previously mentioned, investigations revealed no evidence of rape." (Doc. No. 50 at 8). Because Plaintiff has failed to describe any specific conduct by Defendants that led to his attack, and rests his claim on conclusory allegations that these Defendants implemented deficient policies, his claim cannot survive Defendants' Motion. See Redman, 942 F.2d at 1449.

Finally, Plaintiff contends that Defendant Marrero was directly involved because Marrero chaired a committee hearing on May 27, 2008, where he was made aware of Plaintiff's safety concerns. (SAC at 16). Plaintiff states that at this hearing he informed Marrero that he was requesting single-cell status because he had been unable to find a compatible cellmate, and asked to be placed in the sensitive needs yard because he had been pressured by inmates to perform sexual acts. Id. However, nothing in this allegation indicates that Marrero was made aware of the danger that Hopkins posed to Plaintiff. This general allegation that Plaintiff had been pressured by other inmates does not establish that Marrero was aware of and dismissed a substantial risk to Plaintiff's safety caused by sharing a cell with a different inmate. At most, Marrero was negligent in addressing Plaintiff's concerns, but negligence is not deliberate indifference. Estelle, 429 U.S. at 106. Accordingly, the Court recommends that Defendants' Motion be **GRANTED** as to

1 Defendants Marrero and Contreras, and Plaintiff's claims against those defendants be

2 **DISMISSED**. As discussed above, because Plaintiff has repeatedly failed to correct known

3 deficiencies in his pleading, it is recommended that Plaintiff's claim be **DISMISSED WITH**

4 **PREJUDICE**.

5     **V. CONCLUSION**

6     For the reasons set forth herein, it is **RECOMMENDED** that Defendants' Motion to

7 Dismiss Plaintiff's Second Amended Complaint be **GRANTED** and Plaintiff's claims against

8 Defendants Smith, Marrero and Conteras be **DISMISSED** with prejudice..

9     This report and recommendation will be submitted to the United States District Judge

10 assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (1988). Any party may

11 filed written objections with the court and serve a copy on all parties by **October 5, 2011**. The

12 document shall be captioned "Objections to Report and Recommendation." Any reply to the

13 objections shall be served and filed by **October 12, 2011**.

14     The parties are advised that failure to file objections within the specified time may waive

15 the right to raise those objections on appeal of the Court's order. Martinez v. Ylst, 951 F.2d 1153

16 (9th Cir. 1991).

17     **IT IS SO ORDERED**.

18 DATED: September 14, 2011

                                              Hon. Mitchell D. Dembin
                                              U.S. Magistrate Judge