# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| MUSTAFA WRIGHT, | CASE NO. 09-CV-2566 JLS (MDD) |
|---|---|
| Plaintiff, | **ORDER: (1) GRANTING DEFENDANTS' MOTION TO DISMISS; AND (2) DENYING PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF** |
| vs. | |
| E.A. CONTRERAS, E MARRERO, P.A. CORTEZ, ABAD, D SMITH, | (ECF Nos. 69, 75) |
| Defendants. | |

Presently before the Court is Magistrate Judge Mitchell D. Dembin's report and recommendations ("R&R") advising the Court to grant Defendants' motion to dismiss Plaintiff's second amended complaint ("SAC") with prejudice. (R&R 10, ECF No. 69.) Also before the Court are Plaintiff's objections to the R&R (Objections, ECF No. 71) and Defendants' reply to Plaintiff's Objections. (Reply, ECF No. 72.) Further, Plaintiff has filed a motion for injunctive relief. (Mot. for Injunction, ECF No. 75.) Magistrate Judge Dembin has also issued an R&R as to this motion (Injunction R&R, ECF No. 77), to which Plaintiff objects (Objections to Injunction R&R, ECF No. 78), and Defendants have replied (Reply to Injunction R&R, ECF No. 79). Having considered the parties' arguments and the law, as well as the recommendation of Magistrate Judge Dembin, the Court **GRANTS** Defendants' motion to dismiss **WITHOUT PREJUDICE** and **DENIES** Plaintiff's motion for injunctive relief.

# BACKGROUND[1]

Plaintiff, state prisoner incarcerated at Richard J. Donovan Correctional Facility ("Donovan") in San Diego, California, proceeding pro se, brings this action under 42 U.S.C. § 1983. Plaintiff alleges that Defendants, Donovan correctional officers, violated his rights under the Eighth Amendment by allowing him to be housed with a mentally unstable inmate who had yet to be classified, and who subsequently drugged and raped him. (SAC, ECF No. 53.)

According to Plaintiff, Defendant Smith brought inmate K. Hopkins into Plaintiff's cell on June 5, 2008. At that time, Hopkins was unclassified, as noted by an "8 x 10 tag" Smith placed on the cell door that stated "Orientation Status," meaning that Hopkins had not yet been evaluated by a prison committee to determine an appropriate housing assignment based on a number of factors.

When Defendant Smith arrived, Plaintiff immediately voiced his reluctance to be housed with Hopkins because Hopkins "did not appear sane and he looked physically ill" and because unclassified inmates were not supposed to be mixed with classified inmates.[2] While Plaintiff was attempting further explanation, Defendant Smith walked away, stating that Hopkins was "a little crazy, but we've got to house him." The next day, Plaintiff learned that Hopkins had recently been moved out of his previous cell, on Smith's watch, because his cell mate had refused to reenter with Hopkins present. Hopkins was briefly moved to single cell housing, then placed with Plaintiff. Plaintiff informed Defendant Smith that Hopkins had been up all night threatening Plaintiff, making comments such as "I'm going to get your ass." Defendant Smith then "looked in the cell to Hopkins where he was holding his genitals and smiling, and stated, 'you can handle yourself.'" Plaintiff also complained to Defendants Abad and Cortez about the placement of Hopkins in his cell, stating that he did not feel safe, but was told "to wait it out" until Hopkins was classified.[3]

---

[1] The facts in this background section are taken from the SAC unless otherwise noted.

[2] As part of his allegations as to what Plaintiff told Defendant Smith at this point, Plaintiff offers "a signed Declaration from Francisco J. Soto, an Exhibit to SAC." (Objections 5, ECF No. 71.) The Court could not locate such a declaration in the record.

[3] Plaintiff's claims against Defendants Abad and Cortez survived Defendants' previous motion to dismiss, which was granted in part and denied in part on March 14, 2011. (*See* ECF No. 50.) Defendants have not moved for dismissal of Abad and Cortez in their instant motion to dismiss. Thus, the allegations surrounding these Defendants are not currently at issue.

1           On June 10, 2008, Plaintiff awoke unusually late, felt tired, had problems defecating, and
2   noticed that his sheets and underwear looked different. He experienced pain around his rectum but
3   was uncertain of the cause. When Plaintiff was preparing to take a nap later that day, he saw
4   Hopkins "attempting to pour some of his medication into [Plaintiff's] coffee mug." At that
5   moment, Plaintiff apparently "vividly remember[ed] the night before . . . being druged (sic) and
6   raped." He recalled having set down a bowl of soup "when someone came to the cell door and
7   [he] left [his] bowl unattended. When [he] turned around Hopkins was making the same type of
8   movement . . . with some white powder substance in his hand . . . toward [his] soup bowl." He
9   remembered having been raped and "moved around the cell in stupper (sic)." As soon as he was
10  let out of his cell, Plaintiff told the nurse on duty what happened, and was taken to a hospital for
11  examination. Upon his return, Plaintiff learned that Hopkins had been accused on prior occasions
12  of drugging and raping a cell mate, "which is why Hopkins was previously made to be single
13  celled."

14          Plaintiff explains that Donovan's classification committee may recommend single-cell
15  status for "inmates who demonstrate a history of in-cell abuse, significant in-cell violence toward a
16  cell partner, verification of predatory behavior towards a cell partner, or who have been victimized
17  in-cell by another inmate." According to Plaintiff, unclassified inmates whose records have not
18  yet been reviewed for this determination were not supposed to "mix in with classified inmates,
19  'not even to walk to the dinning (sic) hall to eat.'" Plaintiff states a new inmate's classification
20  might not take place for "weeks or months." At one such committee meeting, Defendant Marrero
21  apparently reviewed Plaintiff's records, which included a previous request by him, made in 2004,
22  to be placed in the sensitive needs yard.

23          In Plaintiff's motion for injunctive relief, he states he is being subjected to retaliation from
24  prison officials in response to his institution of this lawsuit. (Mot. for Injunction 3.) Specifically,
25  he claims he was beaten by three corrections officers on February 12, 2011, who told him "you
26  had it coming for suing our partners." (*Id.*) Following that incident, he was allegedly placed in
27  administrative segregation, and has yet to be placed back in the general population. (*Id.*) Plaintiff
28  contends further that he is being denied access to the courts and suffering irreparable injury. (*Id.*)

## LEGAL STANDARD

**1.  Review of the Report and Recommendation**

Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1) set forth a district court's duties regarding a magistrate judge's R&R.  The Court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(c); *see also United States v. Raddatz*, 447 U.S. 667, 673–76 (1980). However, in the absence of a timely objection, "the Court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72, advisory committee's note (citing *Campbell v. U.S. Dist. Ct.*, 501 F.2d 196, 206 (9th Cir. 1974)).

**2.  Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

"To  survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); see also Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled

1  "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct
2  alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable,
3  but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts
4  "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.*
5  (quoting *Twombly*, 550 U.S. at 557). "All allegations of material fact are taken as true and
6  construed in the light most favorable to the nonmoving party." *Thompson v. Davis*, 295 F.3d 890,
7  895 (9th Cir. 2002). However, the Court need not accept as true "legal conclusions" contained in
8  the complaint. *Iqbal*, 129 S. Ct. at 1949. This review requires context-specific analysis involving
9  the Court's "judicial experience and common sense." *Id.* at 1950 (citation omitted). "[W]here the
10 well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,
11 the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*
12 Moreover, "for a complaint to be dismissed because the allegations give rise to an affirmative
13 defense[,] the defense clearly must appear on the face of the pleading." *McCalden v. Ca. Library*
14 *Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990).

15     Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court
16 determines that the allegation of other facts consistent with the challenged pleading could not
17 possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir.
18 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.
19 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend.
20 *See Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

21 **3.    Liberal Construction of Pro Se Complaints**

22     When a plaintiff appears pro se, the court must be careful to construe the pleadings
23 liberally and to afford the plaintiff any benefit of the doubt. *See Erickson v. Pardus*, 551 U.S. 89,
24 94 (2007); *Thompson*, 295 F.3d at 895. This rule of liberal construction is "particularly important"
25 in civil rights cases. *Hendon v. Ramsey*, 528 F.Supp.2d 1058, 1063 (S.D. Cal. Dec. 28, 2007)
26 (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)); *see also Hebbe v. Pliler*, 611 F.
27 3d 1202, 1205 (9th Cir. 2010) (stating that "because *Iqbal* incorporated the *Twombly* pleading
28 standard and *Twombly* did not alter the Court's treatment of pro se filings, we continue to construe

1  pro se filings liberally." This is particularly important where the plaintiff is a pro se prisoner
2  litigant in a civil rights matter). When giving liberal construction to a pro se civil rights complaint,
3  however, the court is not permitted to "supply essential elements of the claim that were not
4  initially pled." *Easter v. CDC*, 694 F.Supp.2d 1177, 1183 (S.D. Cal. 2010) (quoting *Ivey v. Bd. of*
5  *Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)). "Vague and conclusory
6  allegations of official participation in civil rights violations are not sufficient to withstand a motion
7  to dismiss." *Id.* (quoting *Ivey*, 673 F.2d at 268).

8  The Court should allow a pro se plaintiff leave to amend his or her complaint "unless the
9  pleading could not possibly be cured by the allegation of other facts." *Ramirez v. Galaza*, 334
10 F.3d 850, 861 (9th Cir. 2003) (internal citations omitted). Moreover, "before dismissing a pro se
11 complaint the district court must provide the litigant with notice of the deficiencies in his
12 complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Wayne v.*
13 *Leal*, 2009 WL 2406299, *3 (S.D. Cal. Aug. 4, 2009) (quoting *Ferdik*, 963 F.2d at 1261).

**4.     Eighth Amendment Deliberate Indifference**

15 The state has an obligation to "assume some responsibility for [an inmate's] safety and
16 general well-being." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200
17 (1989). As part of this obligation, the state has a duty to protect an inmate against assaults by
18 other inmates because incarceration, by its very nature, forecloses an inmate's ability to seek
19 outside aid and restricts an inmate's ability to protect himself. *See Wilson v. Seiter*, 501 U.S. 294,
20 303 (1991). Although an inmate will naturally be exposed to harsh and uncomfortable conditions,
21 "gratuitously allowing the beating or rape of one prisoner by another serves no 'legitimate
22 penological objective.'" *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Hudson v.*
23 *Palmer*, 468 U.S. 517, 548 (1984)). To establish a violation of a prison official's duty to take
24 reasonable steps to protect inmates from physical abuse, the prisoner must establish that prison
25 officials were deliberately indifferent to serious threats to the inmate's safety. *Farmer*, 511 U.S. at
26 834.

27 Thus, to allege an Eighth Amendment violation, a prisoner must meet two requirements.
28 First, "the inmate must show that he is incarcerated under conditions posing a substantial risk of

serious harm." *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 34–35 (1993)).  Second, the prison official must have acted or failed to act with "'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 301–302).  To demonstrate deliberate indifference, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* at 837.  This standard is one of subjective recklessness.  *Id.* at 839–40.  Therefore, it is not enough that a reasonable person would have known the risk and that the defendant should have known; rather, the defendant must have acted or failed to act despite knowing of a substantial risk of serious harm.  *See id.* at 843 n.8.  To prove knowledge of the risk, the prisoner may rely on circumstantial evidence; the very obviousness of the risk may be sufficient to establish knowledge.  *Farmer*, 511 U.S. at 842.

With regards to allegations of supervisory liability, in general liability cannot be imposed "vicariously on governing bodies solely on the basis of the existence of an employer–employee relationship with a tortfeasor." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("There is no respondeat superior liability under section 1983.")  However, a supervisor can be liable for constitutional violations of subordinates if the supervisor either (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or "implement[ed] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (internal citations omitted)); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."); *Starr v. Baca*, 652 F.3d 1202, 1221 (9th Cir. Feb. 11, 2011) ("[W]here the applicable constitutional standard is deliberate indifference, a plaintiff may state a claim for supervisory liability based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by others.").
//

Where the asserted basis for supervisory liability is the implementation of a deficient policy that is the moving force of the constitutional violation, such policy "often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently over time." *Lee v. Alameida,* 2010 WL 2629800, *3 (E.D. Cal. 2010) (quoting *Pembaur v. City of Cincinatti*, 475 U.S. 469, 481 (1986)). A "moving force" is defined as a requisite causal connection between the policy and the constitutional deprivation. *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008) ("In other words, there must be 'a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'") (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)); *Wayman v. County of L.A.*, 23 Fed. App'x. 770, 773 (9th Cir. 2001) ("A § 1983 plaintiff can prevail only by demonstrating that the alleged policy is so 'closely related to the ultimate injury' as to constitute the 'moving force behind' it.") (quoting *City of Canton*, 489 U.S. at 391, 388). "The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Redman v. County of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991) (en banc) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)); *Dubner v. City & County of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001).

## ANALYSIS

**1. Defendant Smith**

*A. Summary of R&R's Conclusions*

The R&R recommends that Defendants' motion to dismiss as to Defendant Smith be granted, and claims against Defendant Smith dismissed with prejudice. (R&R 6–7.) The R&R states that "Plaintiff has added no new facts from which an inference could be drawn that Smith was deliberately indifferent to Plaintiff's safety," and bases its recommendation on the fact that "Plaintiff does not contend that Smith was aware of a prior attack by Hopkins on his previous cellmates." (*Id*. at 6.) The R&R reasons that, "[a]t most, Smith was negligent by not further investigating Hopkins." (*Id.*) Further, "[t]here is nothing in Plaintiff's claim that establishes that a risk of physical harm to Plaintiff was 'obvious' to Smith." (*Id.*)

### B. Objections to R&R

Plaintiff objects to the R&R's conclusion that it could not have been obvious to Defendant Smith that Plaintiff was in substantial risk from the facts alleged by Plaintiff. (Objections 5.) According to Plaintiff, the R&R ignores a "significant line of reasoning" set out in *Farmer* which allows a prison official's requisite knowledge to be drawn from the totality of the circumstances, including "inference from circumstantial evidence." (*Id.*) Plaintiff asserts that he has alleged enough facts to allow the Court to draw a reasonable inference that Defendant Smith knew of and disregarded an excessive risk to Plaintiff; specifically, the key facts are that he informed Defendant Smith of Hopkins' threats and his own fear of Hopkins within 24 hours of having Hopkins placed in the cell with him, that Smith knew Hopkins' previous cell mate had refused to go back into the cell with Hopkins because that transfer occurred on Smith's watch, and that Smith knew Hopkins was unclassified. (*Id.* at 5-6.) Plaintiff also objects to the R&R's finding that he has not added new facts sufficient to find that Smith was subjectively aware of a substantial risk of serious harm to Plaintiff. (*Id.* at 9.) Plaintiff states he has added "context" by pointing out Defendant Smith's training and enumerating relevant portions of the Corrections Manual which explains the factors that bear on the classification committee's cell assignment decisions. (*Id.* at 9-11.)

### C. Analysis

The Court cannot agree with Plaintiff's contentions that Magistrate Judge Dembin did not consider the totality of the circumstances or failed to appreciate any additional context added by Plaintiff's SAC. The only "new" fact not explicitly considered in the Court's previous Order dismissing Defendant Smith is that Smith knew that Hopkins was unclassified. The R&R considers this fact and concludes that this knowledge does not allow the inference that Smith was aware of a substantial risk of serious, physical harm to Plaintiff. (R&R 6.) The Court agrees that Plaintiff's allegations of Defendant Smith's knowledge that Plaintiff was afraid of Hopkins, that Hopkins had been transferred because his previous cell mate refused to reenter the cell with him, that Hopkins appeared unstable and had threatened Plaintiff, and that Hopkins was unclassified, all taken as true, do not combine to allow the Court to infer Smith knew of a substantial risk of

1  serious harm, even from circumstantial evidence as allowed under *Farmer*.  Plaintiff has not
2  pointed to any authority indicating that strange behavior, threats, a cellmate's statements of desired
3  transfer, and a prisoner's initial temporary status as unclassified give rise to an inference that
4  prison officials acted with deliberate indifference of substantial risk of serious harm.
5        As the R&R points out, Plaintiff does not allege that Smith was aware of Hopkins'
6  previous single-cell status or of any prior attacks by Hopkins on other cellmates.  (*Id.*); *see also*
7  *Hearns v. Terhune*, 413 F.3d 1036, 1041 (9th Cir. 2005) (reversing district court's dismissal of
8  prisoner's failure-to-protect claims under Section 1983 in relevant part because prison officials
9  knew that some of the inmates had previously attacked prisoners of plaintiff's religious group);
10 *Redman v. County of San Diego*, 942 F.2d 1435 (9th Cir. 1991) (en banc) (reversing in part district
11 court's directed verdict in favor of defendants where prisoner was raped by cellmate and officials
12 knew that perpetrator had been convicted of a sex offense, was classified as an aggressive
13 homosexual in prison records, and had been transferred into the mainline module from the
14 homosexual module because of reported incidents of coercing and manipulating the inmates.)
15 Although alleging a prison official's awareness of a previous attack or of proclivity for antisocial
16 behavior is not a prerequisite to stating a claim for that official's deliberate indifference to the
17 prisoner's safety, something more is needed to allow the Court to infer Defendant Smith knew of a
18 substantial risk of seroius harm to Plaintiff.  "Prisons, by definition, are places of involuntary
19 confinement of persons who have a demonstrated proclivity for antisocial, criminal, and often
20 violent, conduct."  *Hudson*, 468 U.S. 517, 526 (1984).  The Ninth Circuit has noted that "[m]any
21 prisoners are unpredictable.  [The] [p]rison setting is, at best, tense,  It is sometimes explosive, and
22 always potentially dangerous."  *Berg v. Kincheloe*, 794 F.2d 457, 461 (9th Cir. 1986) (quoting
23 *Marchesanie v. McCune*, 531 F.2d 459, 462 (10th Cir. 1976)).  In balancing an awareness of this
24 unstable and potentially dangerous environment with other concerns, "officials may face a number
25 of choices, each posing potential dangers to the prisoner and others.  Choosing the optimal
26 'prophylactic or preventative' measures to prevent violence and maintain safety is difficult and not
27 readily susceptible to judicial evaluation."  *Id.* (quoting *Whitley*, 475 U.S. 312, 321 (1986)).
28 //

For these reasons, the Court agrees with Magistrate Judge Dembin's conclusion that merely expressing subjective fear of a cellmate and pointing out his unsettling behavior, vague threats, and unclassified status does not give rise to a constitutional claim for deliberate indifference against a prison official.  Accordingly, the Court **ADOPTS** Judge Dembin's R&R with respect to Defendant Smith and **GRANTS** the motion to dismiss as to Defendant Smith.

**2. Defendants Contreras and Marrero**

*A.  Summary of R&R's Conclusions*

The R&R recommends that Defendants' motion to dismiss as to Defendants Contreras and Marrero also be granted, and claims against those Defendants dismissed with prejudice.  (R&R 9–10.)  Judge Dembin found that "Plaintiff fails to plead that Marrero or Contreras had any direct involvement in the attack against him."  (*Id.* at 8.)  With regards to Plaintiff's allegation that "Defendant Marrero was directly involved [by] chair[ing] a committee hearing . . . where he was made aware of Plaintiff's safety concerns," the R&R concludes this "does not establish that Marrero was aware of and dismissed a substantial risk to Plaintiff's safety caused by sharing a cell with a different inmate."  (*Id*. at 9.)  Further, Plaintiff presented "no evidence that either Defendant created or implemented the policies at issue," and Judge Dembin found that Plaintiff had failed to "form a causal connection between Defendants and the attack on Plaintiff."  (*Id.* at 8–9.)  Thus, "[b]ecause Plaintiff has failed to describe any specific conduct by Defendants that led to his attack, and rests his claim on conclusory allegations that these Defendants implemented deficient policies, his claim cannot survive Defendants' Motion." (*Id.* at 9.)

*B. Objections to R&R*

Plaintiff objects that he has not alleged direct involvement by Defendants Marrero and Contreras.  He asserts that Defendant Marrero's involvement chairing a committee hearing on May 27, 2008, at which Marrero had access to previous requests by Plaintiff to be placed in the sensitive needs yard or given single-cell status because he had been pressured by other inmates to perform sexual acts, establishes Defendant Marrero's awareness of a substantial risk of serious harm to Plaintiff.  (Objections 6-7.)  According to Plaintiff, the fact that he informed Defendant Marrero of his general safety concerns regarding his need to be placed in a single-cell before

1  Hopkins was placed in the cell with him "should show the veracity of Plaintiff's allegations
2  regarding this Defendant and give plausibility to his claim for relief." (*Id.* 7-8.)  As to Defendant
3  Contreras, Plaintiff asserts his direct involvement is established by his "acquiescing in deficient
4  practices like failing to heed single cell designations and failing in general to provide a 'reasonably
5  safe' condition at the prison. (*Id.* at 8.)   Plaintiff contends that specific conduct is found in both
6  Defendants' failure to "train, instruct, supervise and control subordinates" with regards to written
7  classification and single-cell status policy.  (*Id.* at 13.)  "[T]heir practices of ignoring any written
8  policy concerning single or double celling inmate became the official policy." (*Id.* at 14.)
9  Plaintiff alleges Defendants were deliberately indifferent to his safety by implementing this
10 deficient policy "where non-classified inmates or single cell status inmates could be put in a cell
11 with non-compatible inmates." (*Id.* at 12.)

*C. Analysis*

The Court finds that Plaintiff does not raise any new objections not considered by Magistrate Judge Dembin.  The Court agrees with the R&R that Plaintiff has not sufficiently alleged direct involvement by either Defendant.  Plaintiff's statements that Defendant Marrero was made aware of Plaintiff's *previous* safety complaints, unrelated to Hopkins, cannot establish the requisite knowledge for his deliberate indifference here.  "This general allegation that Plaintiff had been pressured by other inmates does not establish that Marrero was aware of and dismissed a substantial risk to Plaintiff's safety caused by sharing a cell with a different inmate." (R&R 9.) The R&R correctly concludes that Plaintiff's allegations with regard to Defendants Contreras and Marrero could only rest upon a theory of "knowledge and acquiescence in unconstitutional conduct by his or her subordinates" based on implementation of a deficient policy. (*Id.* at 8-9.)

In *Starr v. Bacca*, 652 F.3d at 1208–1212, the court found supervisor liability when numerous unconstitutional acts by subordinates resulted in injuries to inmates and these acts were reported to the supervisor, providing him with notice of the acts.  The supervisor's failure to ameliorate the problems while in possession of facts that amounted to an inference of substantial risk was reckless or callous indifference to the rights of inmates and was sufficient to state a claim of supervisory liability for deliberate indifference. *Id.* at 1208.

1  In *Redman v. County of San Diego*, 942 F.2d at 1447, prison officials were unable to house an aggressive homosexual separately from mainline inmates because of prison overcrowding, and the court found that the sheriff who was responsible for the "ultimate direction of operations at the [prison]" and who "knew or reasonably should have known of the overcrowding at a facility under his administration and that he acquiesced in a deficient policy that was a moving force behind [Plaintiff's] rape" could be found liable by a reasonable jury. Additionally, *Redman* found that the lower court erred in dismissing a defendant jail Captain who "generated all policies" and when an unwritten policy allowed an aggressive homosexual to be placed with a general heterosexual population. *Id.* at 1448–49. The placement was done under the defendant Captain's assumption that heterosexuals could more adequately protect themselves from aggressive homosexuals, an assumption that a reasonable jury could determine to be deliberately indifferent to the safety of heterosexuals. *Id.* However, Redman also found that a Lieutenant who "was familiar with the policies and procedures, and implemented them as required by his supervisor, [was not] liable as a policymaker under § 1983." *Id.* at 1449.

As the R&R states, although Plaintiff alleges a deficient policy led to his harm, he establishes neither a causal connection between Defendants and the implementation of the policy, nor a causal connection between the policy and the harm to Plaintiff. (R&R 8-9.) Even if Defendants were responsible for implementing a policy whereby single-cell designations were ignored, which Plaintiff has not claimed here, such a practice could not be said to be the "moving force" behind the alleged constitutional violation. And here, where the deficient policy is perhaps best framed as the failure to timely classify inmates such that an increased risk of being placed with an inmate who would be classified as single-cell is created, the Court cannot find the requisite causal connection to establish liability based on a deficient policy. Unlike in *Starr* and *Redman*, Plaintiff has not plead that Defendants Contreras and Marrero received notice of assaults against inmates caused by a delayed-classification policy or the mixing of classified and unclassified inmates, and were deliberately indifferent despite the notification.

//
//

1   Accordingly, the Court agrees with Magistrate Judge Dembin that Plaintiff's allegations do
2 not state a claim for deliberate indifference against Defendants Contreras and Marrero, **ADOPTS**
3 Judge Dembin's R&R, and **GRANTS** the motion to dismiss as to these Defendants.

### 3. Other Objections

Plaintiff also objects to the R&R on the grounds that it "appears to give significant weight to the Defendants' position that there is no evidence of rape according to the sheriff's Department investigation." (Objections 15.) Further, Plaintiff states the R&R does not sufficiently liberally construe a pro se plaintiff's complaint. (*Id.*)

To the contrary, Magistrate Judge Dembin assumes Plaintiff's allegations that Hopkins raped him are true, stating that "in a motion under 12(b)(6), the Court must accept the non-moving party's allegations as true." (R&R 5.) Thus, the R&R notes, but disregards, Defendants' evidence that no rape in fact occurred, and finds that Plaintiff has alleged a "sufficiently serious injury to satisfy the Eighth Amendment." (*Id.*)

The Court similarly disagrees with Plaintiff's assertion that Magistrate Judge Dembin did not liberally construe Plaintiff's complaint. Even construing a pro se plaintiff's complaint liberally in considering a motion to dismiss, vague and conclusory allegations are not sufficient. *See Easter v. CDC*, 694 F.Supp.2d at 1183. Further, in recommending Plaintiff's complaint be dismissed with prejudice, the R&R correctly notes that Plaintiff has "repeatedly failed to correct known deficiencies in his pleading." (R&R 10.) However, because the Court cannot say Plaintiff's pleading could not possibly be cured by allegation of other facts going to Defendant's specific knowledge and otherwise addressing the above-mentioned deficiencies, the Court finds it may properly allow Plaintiff a final attempt to amend his complaint. *See Ramirez v. Galaza*, 334 F.3d at 861.

### 4. Request for Injunctive Relief

Judge Dembin recommends the Court deny Plaintiff's request for injunctive relief because Plaintiff has failed to provide any showing of a real or immediate threat of irreparable injury or point to a specific instance where he was unable to fully pursue his legal claim. (Injunction R&R 2-4.) Plaintiff's objections do not address the issues raised by the R&R, or even reference the

1  R&R except in title.  Thus, the Court cannot discern Plaintiff's basis for objecting to the R&R.
2  The Court finds the R&R well-reasoned, and incorporates it by reference here.  Accordingly, the
3  Court **ADOPTS** Judge Dembin's R&R and **DENIES** Plaintiff's motion for injunctive relief.

4  **CONCLUSION**

5  For the reasons stated, Plaintiff's claims against Defendants Smith, Contreras, and Marrero
6  are **DISMISSED** without prejudice.  If Plaintiff wishes, he may file an amended complaint
7  addressing the deficiencies noted herein <u>within 45 days of the date that this Order is
8  elecetronically docketed.</u>  Plaintiff's amended complaint must be complete in itself without
9  reference to his previous pleading.  *See* Civil Local Rule 15.1.  Defendants not named and all
10 claims not re-alleged in any amended complaint will be deemed waived.  *See King v. Atiyeh*, 814
11 F.2d 567 (9th Cir. 1987).  If no amended complaint is received by that time, the Clerk shall close
12 the file.  Further, Plaintiff's motion for injunctive relief is **DENIED.**

13 **IT IS SO ORDERED**.

15 DATED:  March 12, 2012

16 *Janis L. Sammartino*
   Honorable Janis L. Sammartino
17 United States District Judge