1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20
21

| MUSTAFA WRIGHT, | CASE NO. 09-CV-2566 JLS (MDD) |
|---|---|
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | (ECF No. 173) |
| N. GRANNIS; SILVA H. GARCIA; E. A. CONTRERAS; OFFICE OF WATCH COMMANDER; E. MARRERO; CHIEF MEDICAL OFFICER; OFFICE OF REGISTERED NURSES; P. A. CORTEZ; ABAD; and D. SMITH, | |
| Defendants. | |

22
23
24
25
26
27
28

   Presently before the Court is Defendants E.A. Contreras ("Contreras"), E. Marrero ("Marrero"), P.A. Cortez ("Cortez"), Abad ("Abad"), and D. Smith's ("Smith," and, collectively, "Defendants") Motion for Summary Judgment or Partial Summary Judgment ("MSJ"). (ECF No. 173.) Also before the Court are the Declaration of Attorney Timothy J. Kral in Support of Defendants' MSJ (ECF No. 174); Plaintiff Mustafa Wright's ("Plaintiff") Opposition to Defendants' MSJ (ECF No. 176); Plaintiff's Opposition to Defendants' MSJ, Eight Exhibits, and Declaration in Support

(ECF No. 181); Defendants' Reply to Plaintiff's Oppositions (ECF No. 182); Plaintiff's Sur-Reply (ECF No. 188); and Defendants' Objection to Plaintiff's Sur-Reply (ECF No. 191). This matter was originally set for a hearing before U.S. Magistrate Judge Mitchell D. Dembin on January 17, 2014. (*See* ECF No. 173.) This Court now takes the matter under consideration without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having considered the parties' arguments and the law, the Court **GRANTS** Defendants' MSJ.

## BACKGROUND

### I.    Procedural History

On November 4, 2009, Plaintiff—a state prisoner proceeding pro se and *in forma pauperis*—initiated the instant civil-rights action under 42 U.S.C. § 1983 against N. Grannis ("Grannis"), Silva H. Garcia, Contreras, the Office of Watch Commander, Marrero, the Chief Medical Officer, the Office of Registered Nurses, Cortez, Abad, and Smith, alleging violations of his Eighth and Fourteenth Amendment rights. (ECF No. 1.)

On January 23, 2010, Plaintiff filed a First Amended Complaint ("FAC") realleging his claims as to all previously named defendants save Grannis and the Office of Registered Nurses. (ECF No. 8.) On April 1, 2010, Defendants moved to dismiss Plaintiff's FAC. (ECF No. 24.) On March 14, 2011, this Court adopted a Report and Recommendation ("R&R") from U.S. Magistrate Judge Barbara L. Major and dismissed Plaintiff's claims against Smith, Marrero, and Contreras.[1] (ECF No. 50.)

On April 27, 2011, Plaintiff filed a Second Amended Complaint ("SAC"), restating his Eighth Amendment claims against Contreras, Marrero, Cortez, Abad, and Smith. (ECF No. 53.) On May 11, 2011, Smith, Marrero, and Contreras moved to dismiss Plaintiff's SAC. (ECF No. 58.) On March 12, 2012, this Court adopted the R&R of Magistrate Judge Dembin dismissing Plaintiff's claims against these

---

[1] As recommended by Magistrate Judge Major, this Court denied the motion to dismiss as to Defendants Abad and Cortez. (*See generally* Order, ECF No. 50; R&R 9–10, ECF No. 35.)

Defendants. (ECF No. 80.) This Court declined to adopt the recommendation that Plaintiff's claims against Smith, Marrero, and Contreras be dismissed with prejudice, instead "allow[ing] Plaintiff a final attempt to amend his complaint." (*Id.* at 14.)

On April 6, 2012, Plaintiff filed a Third Amended Complaint ("TAC"), again restating his Eighth Amendment claims against Defendants. (ECF No. 81.) On April 20, 2012, Smith, Marrero, and Contreras again moved to dismiss Plaintiff's TAC. (ECF No. 83.) On October 4, 2012, this Court adopted the R&R of Magistrate Judge Dembin granting in part and denying in part Smith, Marrero, and Contreras' motion to dismiss. (ECF No. 120.)

Defendants subsequently filed the present MSJ. In one of his oppositions, Plaintiff noted that two third parties on whom subpoenas had been served had failed to properly respond, and, as a result, there could be additional discovery that would affect the outcome of Defendants' MSJ. (Second Opposition 16–17, ECF No. 181.) Plaintiff moved to compel discovery responses. (ECF No. 202.)

Accordingly, Magistrate Judge Dembin issued Orders directing that new subpoenas be served on the third parties and demanding that the two third parties respond properly to the subpoenas. (ECF Nos. 217, 225.) The third parties responded and demonstrated their compliance with Magistrate Judge Dembin's Orders. (ECF No. 229.) Magistrate Judge Dembin then granted Plaintiff permission to file a supplemental brief on or before September 12, 2014 to explain how the additional discovery responses affected the disposition of Defendants' MSJ. (ECF No. 233.) Plaintiff filed a supplemental brief. (ECF No. 234.)

## II. Factual Background

On June 5, 2008, Smith escorted inmate K. Hopkins ("Hopkins") to Plaintiff's cell at the Richard J. Donovan Correctional Facility ("Donovan") and presented Hopkins as Plaintiff's new cellmate. (Decl. of Att'y Timothy J. Kral in Supp. of Defs.' MSJ ("Kral Decl.") Ex. B (Deposition of Mustafa Wright), at 157:8–11, ECF No. 174.) Plaintiff had double cell status and was not entitled to the cellmate of his choice. (*Id.*

at 44:24–45:20.)  Plaintiff immediately told Smith that he was reluctant to be housed with Hopkins because Hopkins appeared to be mentally disturbed and physically ill. (*Id.* at 158:18–22; TAC 7, ECF No. 81; First Opp'n 4, ECF No. 176; Second Opp'n 44 (Decl. of James Brown), ECF No. 181.)  Smith responded by laughing and telling Plaintiff, "He's a little crazy, but we've got to house him."  (TAC 8, ECF No. 81.)

On June 6, 2008, Plaintiff heard rumors that Hopkins had been moved out of his previous cell because Hopkins' former cellmate had refused to reenter the cell with Hopkins housed there. ( *Id.*)  Plaintiff complained to Smith that Hopkins had been up all night mumbling profanities and threatening Plaintiff with comments such as, "I'm going to get your ass."  (*Id.*)  Smith looked into the cell, where he could see Hopkins holding his genitals and smiling.  (*Id.*; Kral  Decl. Ex. B, at 167:9–11, ECF No. 174.) Smith dismissed Plaintiff's concerns, however, telling Plaintiff, "You can handle yourself."  (Kral Decl. Ex. B, at 167:23–24, ECF No. 174.)

On June 7, 2008, Plaintiff took his complaint to Abad, a counselor.  (TAC 8, ECF No. 81.; Kral Decl. Ex. B, at 194:21–22, 197:4–20, ECF No. 174.)  Plaintiff repeated that he did not feel safe with Hopkins.  (Kral Decl. Ex. B, at 176:4–11, ECF No. 174.)  Abad informed  Plaintiff that Plaintiff could be housed in an Administrative Segregation Unit instead.  (*Id.* at 175:7–11.)  Plaintiff declined.  (*Id.* at 175:12–18.)

That same day, inmate Ramon Murillo ("Murillo"), a third party, declares that he overheard a conversation between Smith, Marrero, and Contreras.  (Kral Decl. Ex. C (Decl. of Ramon Murillo) ¶ 4, ECF No. 174-1.)  Murillo reports that Marrero asked Smith, "How is it going with the Booty Bandit?"[2]  (*Id.*)  In response, Contreras asked, "You mean Hopkins?", which brought a laugh from all three men.  (*Id.*)  Smith answered Marrero's question by stating that "no one wanted to live with Mr. Hopkins so [I] was going to place him with Mr. Wright."  (*Id.*)  Smith further commented that "Mr. Wright might enjoy himself, he [i]s big enough."  (*Id.*)

---

[2]Plaintiff alleges that the term "Booty Bandit" refers to someone who tries "to rape people in prison." (Kral Decl. Ex. B, at 229:24–230:1, ECF No. 174.)

On June 8, 2008, Plaintiff returned to Abad's office to ask if he or Hopkins could be moved to another cell.  (Kral Decl. Ex. B, at 202:6–9, ECF No. 174.)  Abad asked Plaintiff to step out of the office and telephoned Cortez.  (*Id.* at 204:1–15.)  Abad and Cortez then spoke in private about Hopkins.  (*Id.*)  When Plaintiff was brought back into Abad's office, Abad told Plaintiff that he would bring Hopkins before the classification committee, but until then Hopkins would remain housed with Plaintiff.  (*Id* at 204:15–23.)

Throughout June 10, 2008, Plaintiff noticed pain in and around his rectum.  (TAC 9, ECF No. 81; Kral Decl. Ex. B, at 113:1–6, ECF No. 174.)  Plaintiff saw that his sheets and clothes had been changed, but didn't remember changing them.  (TAC 9, ECF No. 81.)  He also woke up later than usual and was fatigued the whole day.  (*Id.* at 9–10; Kral Decl. Ex. B, at 99:13–22, ECF No. 174.)  Plaintiff also felt constipated, "which wasn't the norm."  (TAC 9, ECF No. 81; Kral Decl. Ex. B, at 102:5–14, ECF No. 174.)  When Plaintiff attempted to take a nap, he noticed Hopkins attempting to pour some medication into Plaintiff's coffee mug.  (TAC 10, ECF No. 81.)

At this point, Plaintiff "vividly remember[ed]" events from the prior evening.  (*Id.*)  Specifically, Plaintiff recalled seeing Hopkins pour a white powder into his soup when Plaintiff was distracted by a visitor.  (*Id.*; Kral Decl. Ex. B, at 149:5–150:25, ECF No. 174.)  "Images flashed through [Plaintiff's] mind" of being raped by Hopkins and pushed around his cell in a stupor.  (TAC 10, ECF No. 81; Kral Decl. Ex. B, at 115:4–14, 117:12–24, ECF No. 174.)

James Brown ("Brown"), a neighboring inmate, declares that, in June 2008, he heard Plaintiff and Hopkins arguing in their cell, but Brown does not identify what Plaintiff and Hopkins were arguing about or the exact date of the argument(s).  (Second Opp'n 44 (Decl. of James Brown), ECF No. 181.)  Nor does Brown declare that any of the Defendants heard or responded to the argument(s).  (*Id.*)

After recalling the events of the previous night, Plaintiff went to the nurse's station and reported what he remembered.  (TAC 10, ECF No. 81; Kral Decl. Ex. B, at

32:3–4, ECF No. 174.)  Plaintiff was brought to Alvarado Hospital and examined. (TAC 10–11, ECF No. 81; Kral Decl. Ex. B, at 32:5–10, ECF No. 174.)

An October 2, 2008 Investigative Services Unit report discovered no evidence of rape.  (Decl. of Robert G. Borg ("Borg Decl.") ¶ 65, ECF No. 173-3.)   The December 23, 2008, San Diego Sheriff's Department ("SDSD") Crime Lab report was likewise negative for rape.  (*Id.* ¶ 66.)  The Sexual Assault Response Team ("SART") investigation, which included a forensic study of Plaintiff, found some redness and swelling of the anal cavity but, again, no evidence of rape.  (*Id.* ¶ 67.)

According to his sworn declaration, Dr. Bruce Barnett ("Dr. Barnett"), an expert retained by Defendants, found that Plaintiff had not been "abnormally or excessively sedated" and was not subject to any sexual assault.  (Declaration of Bruce Barnett, M.D. ("Barnett Decl.") ¶ 11, ECF No. 173-2.)  A July 11, 2008, exam by Nurse Rankle found no injuries to Plaintiff's rectum or anus and, despite some redness of the rectum, found no evidence of rape.  (*Id.* ¶ 12(A).)  According to Dr. Barnett, the redness of the rectum was not significant, as the exam revealed no trauma or injuries consistent with rape.  (*Id.* ¶ 12(B).)  Blood and urine tests collected by Nurse Rankle showed no evidence that Plaintiff had been drugged.  (*Id.* ¶ 12(C).)

After returning from Alvarado Hospital, Plaintiff heard rumors that Hopkins, at his previous prison, had been placed in administrative segregation for drugging and raping his cellmate.  (TAC 11, ECF No. 81.)  The record reveals that Hopkins was accused of battery by his former cellmate at California State Prison-Sacramento ("CSP-SAC") and placed in administrative segregation pending investigation of those charges. (Borg Decl. ¶ 19, ECF No. 173-3.)  However, the alleged battery did not include sexual misconduct of any type, and the investigation concluded that there was insufficient evidence to charge Hopkins with battery.  (*Id.*)

Prior to his transfer to Donovan, Hopkins was cleared by CSP-SAC for double cell housing.  (*Id.* ¶ 20.)  According to Robert Borg ("Borg"), an expert in correctional settings and California Department of Corrections and Rehabilitation ("CDCR")

procedures, such a classification would have been made by the Classification Services Representative ("CSR") who approved Hopkins' transfer. (*Id.*)  Hopkins' status was also reviewed by the Receiving and Release Sergeant in compliance with Operational Plan ("OP") 85 and CCR 3269(a). (*Id.* ¶ 27.)  Borg declares that a review of Hopkins' inmate file dating back to 1991 did not reveal a pervasive pattern of in-cell violence, and Hopkins has no criminal history of sex offenses. (*Id.* ¶ 29).

According to a CDCR Form 128-G, on October 5, 2001, an inmate accused Hopkins of sexual assault. (*Id.*; Second Opp'n 45, ECF No. 181.)  According to Borg, however, Hopkins did not receive a Rule Violation Report for the "unsubstantiated allegation," and Hopkins was not reclassified to single-cell status as a result of the accusation. (*Id.*)

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Material facts are those that may affect the outcome of the case. *Id.* at 248.  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." *Id.*; *Sec. & Exch. Comm'n v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  Thus, "[i]f reasonable minds could differ" as to the outcome of the dispute, summary judgment must be denied. *Anderson*, 477 U.S. at 250–51.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323.  The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the

nonmoving party's case; or (2) by demonstrating to the Court that the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id*. at 322–23.

Once the moving party satisfies this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 324.  To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To survive summary judgment the nonmoving party must "make a showing sufficient to establish the existence  of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.   Furthermore, the nonmoving party cannot oppose a properly supported motion for summary judgment by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.  Rather, the nonmoving party must identify those facts of record that would contradict the facts identified by the movant. *Id.* at 256–57; *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249).

The district court is "not required to comb the record to find some reason to deny a motion for summary judgment." *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417–18 (9th Cir. 1988); *Nilsson v. La. Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988). Nonetheless, the court may exercise its discretion, "in appropriate circumstances," to consider materials in the record that are on file but not "specifically referred to" by the parties. *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  The court need not, however, "examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could be conveniently found." *Id.*

Moreover, in ruling on a motion for summary judgment, the court need not accept legal conclusions "cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  "No valid interest is served by withholding

summary judgment on a complaint that wraps nonactionable conduct in a jacket woven of legal conclusions and hyperbole." *Vigliotto v. Terry*, 873 F.2d 1201, 1203 (9th Cir. 1989).

## ANALYSIS

Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 3301–31 (1986). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

The Eighth Amendment protection against cruel and unusual punishment ensures that prisoners are kept in conditions compatible with "civilized standards, humanity, and decency." *Estelle v Gamble*, 429 U.S. 97, 102 (1976). The state has an obligation to "assume some responsibility for [an inmate's] safety and general well-being." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 200 (1989). Accordingly, prison officials have a duty to protect prisoners from violence at the hands of other inmates. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Although an inmate will naturally be exposed to harsh and uncomfortable conditions, "gratuitously allowing the beating or rape of one prisoner by another serves no 'legitimate penological objective.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 548 (1984)).

In his TAC, Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by: (1) failing to classify Hopkins with single-occupant cell status despite knowledge that Hopkins had raped his prior cellmate, (2) housing Hopkins with Plaintiff despite knowing that Plaintiff was on a sensitive needs yard due to "being pressured by inmates in general population to perform sexual acts," and (3) refusing to transfer Hopkins to another cell despite knowing that Hopkins posed a risk to Plaintiff. (TAC 19–21, ECF No. 81.)  Plaintiff alleges that each of these acts or omissions resulted in Plaintiff being drugged and raped by Hopkins. (*Id.*)

In their MSJ, Defendants contend that Plaintiff's deliberate indifference claim fails as a matter of law. (MSJ 15, ECF No. 173-1.)  Defendants contend that Plaintiff has failed to show that he was incarcerated under conditions posing a substantial risk of harm, that he was sexually assaulted by another inmate, or that Defendants were indifferent to his medical needs. (*Id.* at 15, 19, 22.)  Defendants also contend that Plaintiff's claims based on supervisory liability fail. (*Id.* at 24.)

## I.   Deliberate Indifference

In order to state a deliberate indifference claim under the Eighth Amendment, an inmate must first show that he suffered a deprivation or injury that was "objectively, sufficiently serious." *Farmer*, 511 U.S. at 834 (internal citations omitted).  Second, the plaintiff must show that the prison officials had a "sufficiently culpable state of mind" in that they acted with "deliberate indifference to a substantial risk of serious harm to an inmate." *Id.* Deliberate indifference requires that the official know of and disregard an excessive risk to inmate health or safety. *Id.* at 837.  The official must not only be aware of facts from which one could reasonably infer that a substantial risk of serious harm exists, but must also actually draw that inference. *Id.*

"A plaintiff may make the factual showing that a prison official had the requisite knowledge of a substantial risk in the usual ways, including inference from circumstantial evidence." *Id.* at 842 (internal citations omitted).  A showing of mere

negligence is insufficient to establish deliberate indifference. *Id.* at 837.  Even gross negligence does not constitute deliberate indifference. *Id.*  However, "[t]urning a blind eye to the relevant surrounding facts will not shield a prison official from liability." *Swan v. United States*, 159 F. Supp. 2d 1174, 1182 (N.D. Cal. 2001).  "'If the evidence shows that a [prison official] merely refused to verify underlying facts that he strongly suspected to exist . . . , liability may be imposed." *Id.* at 1182 (citing *Farmer*, 511 U.S. at 843 n.8).

Plaintiff contends that Defendants violated his Eighth Amendment rights by failing to protect him from Hopkins.  (TAC 12, ECF No. 81.)  Specifically, Plaintiff alleges that Defendants failed to put Hopkins through an inmate classification process and place Hopkins in single cell housing.  (*Id.* at 13–14.)  Both of these omissions, according to Plaintiff, were in violation of CDCR regulations.  (*Id.*)  Plaintiff further alleges that, as a result of these failures, Hopkins was placed in Plaintiff's cell, which caused Plaintiff's sexual assault.  (*Id.*)

Defendants contend that Plaintiff's claim fails as a matter of law. (MSJ 15, ECF No. 173-1.)  First, Defendants contend that Plaintiff fails to satisfy the objective element of his Eighth Amendment claim because he fails to establish that Hopkins was classified as dangerous and because there is no evidence that a rape actually occurred. (*Id.* at 16–19).  Second, Defendants contend that Plaintiff failed to satisfy the subjective element of his Eighth Amendment claim because there is no evidence that any Defendant acted with deliberate indifference.  (*Id.* at 20–22).

## A.   *Objective Element*

Defendants contend that Plaintiff fails to establish that the conditions of his confinement were unconstitutional, as Plaintiff shows neither that his confinement with Hopkins was unreasonable nor that Hopkins actually raped him.  The Court agrees.

Contrary to Plaintiff's allegations in his TAC, the evidence shows that Hopkins was properly classified during the intake process and was not randomly assigned to Plaintiff's cell.  According to Borg's sworn statements, prior to Hopkins' transfer from

CSP-SAC to Donovan, Hopkins was cleared for double cell housing by the Classification Services Representative at CSP-SAC who approved the transfer. (Borg Decl. ¶ 20, ECF No. 173-3.) Although Hopkins' cellmate at CSP-SAC had accused Hopkins of battery, the battery allegations did not include sexual misconduct of any type, and the investigation into the allegations concluded that there was insufficient evidence to charge Hopkins. (*Id.* ¶ 19.) When Hopkins arrived at Donovan, his status was again reviewed by the Receiving and Release Sergeant, in compliance with OP 85 and CCR 3269(a). (*Id.* ¶ 27.) According to CCR 3269, the single Rules Violation Report for the substantiated battery was insufficient basis for reclassifying Hopkins to a single-cell status. (*Id.* ¶ 29.)

Plaintiff notes that, according to a CDCR Form 128-G, Hopkins had been accused of a sexual assault on October 5, 2001. (Second Opp'n 45, ECF No. 181.) However, that accusation was unsubstantiated; therefore, Hopkins did not even receive a Rule Violation Report for the supposed incident. (*Id.*; Borg Decl. ¶ 29, ECF No. 173-3.) Significantly, a November 30, 2006 Classification Chrono following the incident found that Hopkins did not meet single-cell housing criteria. (*Id.*) In sum, Hopkins' record reveals that he had neither a pervasive pattern of in-cell violence nor a criminal history of sex offenses, rendering his double-cell classification reasonable. (*Id.* ¶ 29.)

Nor does the evidence in the record support Plaintiff's contention that in-cell violence at Donovan had been escalating prior to his attack. Plaintiff claims that Defendants' interrogatory responses show that in-cell violence had been escalating. (Second Opp'n 22–25, ECF No. 181.) In actuality, Defendants' interrogatory responses show that between January 2007 and July 2008, there were 13 reported sexual assaults and 46 reported assaults at Facility Three, but that in 2006 there were 163 assaults and an unknown number of sexual assaults in all of the facilities at Donovan. (*Id.*) However, Facility Three has a smaller population size than Donovan as a whole, and thus no inference about trends in in-cell violence at Donovan can be drawn from the data. Plaintiff has provided no other evidence on this point.

Further, with the exception of Plaintiff's own statements, there is no evidence that Hopkins sexually assaulted or raped Plaintiff. When Nurse Rankle examined Plaintiff on July 11, 2008, she saw only some redness of the rectum. (Barnett Decl. ¶ 12(A), ECF No. 173-2.) She found no injuries to Plaintiff's rectum or anus and no evidence of rape. (*Id.*) Moreover, the blood and urine tests she collected showed no evidence that Plaintiff had been drugged. (*Id.* ¶ 12©.)

Later reports corroborate Nurse Rankle's findings. An October 2, 2008 Investigative Services Unit report discovered no evidence of rape. (Borg Decl. ¶ 65, ECF No. 173-3.) Similarly, the December 23, 2008 SDSD Crime Lab report found no evidence of rape.[3] (*Id.* ¶ 66.) The SART investigation, which included a forensic study of Plaintiff, found some redness and swelling of the anal cavity, but, again, no evidence of rape. (*Id*. ¶ 67). After reviewing the relevant medical files, Dr. Barnett found that Plaintiff had not been "abnormally or excessively sedated" and was not sexually assaulted. (Barnett Decl. ¶ 11, ECF No. 173-2.) According to Dr. Barnett, the redness of Plaintiff's rectum was not significant and Plaintiff exhibited no traumas or injuries consistent with rape. (*Id.* ¶ 12(B).) Ultimately, Plaintiff's self-serving statements, uncorroborated by other evidence, are insufficient to create a genuine issue of material fact. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citations omitted) ("[T]his court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony.").

Plaintiff contends that the redness and swelling of his rectum is indicative of rape. (Second Opp'n 14–15, ECF No. 181.) Plaintiff also cites the District Attorney's ("DA") Complaint Request which states that the "SART exam is consistent with the sodomy." (*Id.* Ex. 8.) Plaintiff conveniently overlooks that the same report, however,

---

[3] Plaintiff questions the authenticity and reliability of this report, seemingly arguing that long delays in processing samples and delivering results permit the inference that this evidence has been tampered with. (*See* Resp. to Order 4–8, ECF No. 234.) Discounting this report, the fact remains that the other reports were negative for rape. Further, because the reports were processed by separate entities, the Court finds no reason to believe that any purported tampering with one report draws into question the rest.

concluded that there was insufficient evidence of rape and thus ordered additional testing. (*Id.*)  Thus, the DA's Complaint Request does not contradict the SART or the other reports indicating that no rape occurred.  Rather, the numerous laboratory tests and reports, which were based on SART kit evaluations of Plaintiff and Hopkins, concluded that there was no evidence of rape or sexual assault.

To establish a violation of a prison official's duty to take reasonable steps to protect inmates from physical abuse, the prisoner must establish that the official was deliberately indifferent to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834.  Plaintiff has failed to establish a triable issue of material fact as to whether Defendants failed to classify Hopkins' cell status, wrongly classified Hopkins, or ignored Hopkins' classification when assigning him to Plaintiff's cell.  Likewise, Plaintiff has failed to establish that he was actually drugged, raped, or sexually assaulted by Hopkins.  Accordingly, Plaintiff has failed to establish that he was exposed to an excessive danger or that he suffered an unreasonable constitutional deprivation. *Farmer*, 511 U.S. at 833.  Because Plaintiff has failed to meet the objective requirement of his Eighth Amendment claim, his claim fails as a matter of law.

## B.   Subjective Element

Had Plaintiff met his burden with respect to the objective element, there would be a genuine issue of fact requiring trial on the subjective element with respect to Smith, Marrero, and Contreras, but not with respect to Abad and Cortez.  In *Berg v. Kincheloe*, the Ninth Circuit articulated the deliberate indifference standard with regard to the prevention of inmate attacks:

> A prisoner may state a section 1983 claim under the eighth and fourteenth amendments against prison officials where the officials acted with "deliberate indifference" to the threat of serious harm or injury by another prisoner.  The "deliberate indifference" standard requires a finding of some degree of "individual culpability," but does not require an express intent to punish.  The standard does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault. But, on the other hand, he must have more than a mere suspicion that an attack will occur.

1 | 794 F.2d 457, 459 (9th Cir. 1986).

2 |      If Plaintiff had met the objective element the evidence would create an issue of
3 | material fact regarding Smith's, Contreras', and Marrero's subjective awareness of a
4 | danger to Plaintiff's safety.  Plaintiff alleges that Smith, Marrero, and Contreras joked
5 | about Hopkins' propensity for sexual violence and a possible sexual attack against
6 | Plaintiff.  (TAC 20, ECF No. 81.) Plaintiff provides the declaration of Murillo, who
7 | declared that he overheard this conversation on June 7, 2008—two days before the
8 | alleged attack.  (Kral Decl. Ex. C (Decl. of Ramon Murillo) ¶ 4, ECF No. 174-1.)
9 | Defendants rely on Borg's declaration to support their assertion that Smith, Contreras,
10 | and Marrero had no access to Hopkins' file, so they would have been unaware of
11 | Hopkins' history of violence, and that, even if they did have access to Hopkins' file,
12 | there was no such history of violence.  (MSJ 22, ECF No. 173-1; Borg Decl. ¶¶ 19, 22,
13 | 29, 62, ECF No. 173-3.)  Defendants' evidence does not invalidate Murillo's
14 | declaration, however.  These conflicting statements present conflicting facts that, if
15 | Plaintiff had established a constitutional deprivation, would have needed to be resolved
16 | by trial.

17 |      Plaintiff also supports his argument that Defendants had subjective awareness of
18 | Hopkins' dangerousness with the declaration of inmate James Brown.  (Second Opp'n
19 | at 44, ECF No. 181.)  In his declaration, Mr. Brown states that he heard Plaintiff and
20 | Hopkins arguing in their cell in early June 2008.  (*Id.*)  This statement, however, is
21 | insufficient to show that Defendants were indifferent to a substantial danger to
22 | Plaintiff's safety, as the statement does not indicate that any of Defendants actually
23 | heard the argument.  Moreover, the mere fact of an argument would not, in and of itself,
24 | indicate to Defendants that Hopkins planned to sexually assault Plaintiff.  Even if such
25 | an argument would have alerted Defendants that such an attack was to occur, such
26 | suspicion is insufficient to establish a violation of the Eighth Amendment.  *Berg*, 794
27 | F.2d at 459.  Accordingly, the Court accords this argument no weight.

28 |      In addition to the group-based subjective awareness allegations, Plaintiff claims

that Smith was subjectively aware of the danger Hopkins posed to Plaintiff due to Smith's involvement in transferring Hopkins to Plaintiff's cell. The evidence of Smith's limited involvement in Hopkins' transfer does not, however, establish the requisite subjective awareness. According to Borg's sworn declaration, Smith was not involved in the decision to house Hopkins with Plaintiff. (MSJ 20, ECF No. 173-1; Borg Decl. ¶¶ 51–54, ECF No. 173-3.) Plaintiff has introduced no evidence to the contrary. Smith did not enter or approve the decisions to transfer Hopkins. (Borg Decl. ¶¶ 52–53, ECF No. 173-3.) Indeed, the decision to house Hopkins with Plaintiff was made on the morning of June 4, 2008, when Smith was off-duty. (*Id.* ¶ 51.) Even if Smith had been involved in the decision, there is no evidence that Smith was or should have been aware that such a move would have been dangerous to Plaintiff. Both Hopkins and Plaintiff were placed in accordance with their cell statuses, which were assigned by third parties. Even if Smith had reason to question their statuses, according to Borg, there was no way for Smith to independently verify Hopkins' housing status or dangerous nature. (*Id.* ¶ 57.)

Plaintiff also produced no evidence to support his allegation that Smith moved Hopkins from cell 126 in unit 13 to cell 223 in unit 14 on June 3, 2008 in response to another inmate's refusal to double-cell with Hopkins. (TAC 21, ECF No. 81.) Accordingly, Plaintiff has presented no admissible evidence to contradict the sworn statements of Borg and the objective evidence concerning Hopkins' and Plaintiff's cell statuses. Smith's involvement in transferring Hopkins to Plaintiff's cell presents no genuine issue as to Smith's individual subjective awareness.

With regard to Abad and Cortez, Plaintiff has presented no admissible evidence indicating that either was aware of and disregarded a substantial danger to Plaintiff's safety posed by Hopkins. Rather, the evidence shows that Abad and Cortez responded immediately and appropriately to Plaintiff's concerns, despite the fact that there was no substantial danger to Plaintiff's safety. On June 7, 2008, Plaintiff complained to Abad that Hopkins was crazy and that Plaintiff wanted Hopkins moved out of his cell. (TAC

8, ECF No. 81; Kral Decl. Ex. B at 197:4–20, ECF No. 174.)  Abad set up a meeting with Plaintiff in his office, listened to Plaintiff's complaint, and spoke to Cortez telephonically about Hopkins.   (TAC 8, ECF No. 81; Kral Decl. Ex. B at 200:10–204:17, ECF No. 174.) Abad informed Plaintiff that he and Cortez would immediately investigate. (TAC 8, ECF. No. 81). Plaintiff admits that Abad acknowledged Plaintiff's concern and offered to immediately move him to Administrative Segregation so that Plaintiff would not have to share a cell with Hopkins until the matter could be investigated.  (Kral Decl. Ex. B at 205:22–206:1, ECF No. 174). Abad's offer to place Plaintiff in Administrative Segregation may have had a dual purpose—to address Plaintiff's safety concerns and as a threat of disciplinary action under CDCR 3269(g) for refusing to accept a housing assignment. (*See* Borg Decl. ¶ 63, ECF No. 173-3.)  Nevertheless, the offer provided an immediate mechanism for addressing Plaintiff's safety concern while Abad and Cortez further investigated the situation.

As established above, Hopkins was properly classified and assigned to Plaintiff's cell in accordance with all prison guidelines.  Hopkins did not have a history of violence that justified a different cell status, and, even if he did, Plaintiff has not established that Defendants were aware of that history.  Defendants, although under no obligation to move Hopkins based merely on Plaintiff's complaints, offered to move Plaintiff to administrative segregation so they could investigate, but Plaintiff rejected this option. Rather than show deliberate indifference, this shows that Cortez and Abad were actively concerned with Plaintiff's safety and took reasonable steps to address Plaintiff's alleged problems with Hopkins.  Accordingly, Plaintiff has introduced no evidence to show that either Defendant Cortez or Defendant Abad were deliberately indifferent to his safety in violation of the Eighth Amendment. *Farmer*, 511 U.S. at 833.  Thus, even if Plaintiff had established a triable issue of fact on the objective element of his deliberate indifference claim, his claim would still fail as to Defendants Abad and Cortez on the subjective element.

In sum, the Murillo declaration offered by Plaintiff creates a triable issue of material fact as to the subjective element of his Eighth Amendment claim as to Defendants Smith, Marrero, and Contreras, but not as to Defendants Abad and Cortez. Because Plaintiff has failed, however, to satisfy the objective element of his claim, the entire claim fails as a matter of law as to all Defendants, and summary judgment is appropriate.  Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 322.

## II.   Supervisory Liability

The Ninth Circuit has recognized a theory of direct liability based on a supervisor's "knowledge and acquiescence in unconstitutional conduct by his or her subordinates." *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  A supervisor is liable in his individual capacity for "the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208 (citing *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).

"A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 1207 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). The requisite casual connection is present when the supervisor sets in motion a series of acts by others or knowingly refuses to terminate a series of acts by others that the supervisor "knows or reasonably should have known would cause others to inflict a constitutional injury."  *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir 1991); *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001).

Plaintiff alleges that Marrero and Contreras violated his rights by "failing to train, instruct, supervise, and control subordinates."  (TAC 17, ECF No. 81.) Plaintiff contends that Marrero and Contreras failed to provide necessary training despite incessant cell violence. (Second Opp'n 10, ECF No. 181). Defendants contend that this claim fails because the assignment of Hopkins to Plaintiff's cell was made according to

established policy and there was nothing in Hopkins' history indicating any risk of rape. (MSJ 24, ECF No. 173-1.) Thus, Marrero and Contreras neither failed to train their subordinates nor exhibited deliberate indifference. (*Id*.)

Here, Plaintiff has failed to establish a necessary element of his claim. For the reasons already identified, Plaintiff has failed to establish any constitutional violation. Without such a deprivation, there is no basis to hold either Marrero or Contreras liable as a supervisor. *Hansen,* 885 F.2d at 646.

Even had Plaintiff established a constitutional violation, Plaintiff does not allege, much less establish, that either Marrero or Contreras were personally involved in the decision to house Hopkins with Plaintiff. Plaintiff has likewise failed to establish any causal connection between Marrero or Contreras and the allegedly unconstitutional behavior. Plaintiff has introduced no evidence showing that either was responsible for instructing any subordinate Defendants in cell assignment or acquiesced in unconstitutional behavior. Nor has Plaintiff shown that any Defendant failed to follow CDCR policy regarding cell assignment. Rather, both Marrero and Contreras provided detailed discovery responses outlining their training and supervision efforts, and no Defendant claimed ignorance in proper cell assignment procedure. (*See* Second Opp'n 11, 35–39, ECF No. 181.)

Plaintiff points to Smith's discovery responses, which state generally that Smith received training and instruction regarding how to keep inmates safe. (*Id.* at 11.) Plaintiff contends that because Smith failed to specify that this training was provided by Marrero or Contreras, it is an admission that Marrero and Contreras failed to train him. (*Id.*) Plaintiff also contends that Marrero and Contreras failed to train staff with regard to OP 85. (*Id.* at 12.) However, as Defendants urge, Plaintiff takes these discovery responses out of context and ignores the bulk, which detail how Marrero and Contreras provided training and supervision and that reveal that neither Marrero nor Contreras was in charge of cell assignments or training regarding cell assignments. (Resp. to Second Opp'n 9, ECF No. 182.) Ultimately, Smith's responses, which fail to

specify who trained him, do not contradict the otherwise significant evidence that Marrero and Contreras provided adequate training and instruction to their subordinates. Accordingly, Plaintiff has failed to establish a genuine issue of any material fact as to supervisor liability for Defendants Marrero and Contreras.

## CONCLUSION

Plaintiff's claim of deliberate indifference by prison officials in violation of his Eighth Amendment right to be free from cruel and unusual punishment fails as a matter of law. Although Plaintiff presented a triable issue of fact on the subjective element as to Defendants Smith, Marrero, and Contreras, Plaintiff's failure to satisfy the objective element of his claim is determinative. Plaintiff also failed to establish a genuine issue of material fact with respect to supervisor liability. Thus, the evidence shows that no genuine issue of material fact exists, and Defendants are entitled to summary judgment.

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment. **IT IS SO ORDERED**.

DATED: September 26, 2014

Honorable Janis L. Sammartino
United States District Judge

09cv2566